90 473
111 392

WILSON *et al.* v. LERCHE *et al., Appellants.*

Limitations: ADVERSE POSSESSION: CLAIMANT LEASING PREMISES CLAIMED ADVERSELY. Where the owners of adjoining lots built their division fence two feet from the true line, in ignorance of where such line was, there being no intention on the part of him who thus inclosed a portion of the other's land to claim beyond the true line, and such party so inclosing the strip of land then leased the other's lot and held possession of it for five years, he cannot acquire title to the strip of land on the ground of adverse possession, having surrendered his lease in 1875, a time within ten years next before suit brought, although he may have held adversely since that date. His possession of the strip of land in controversy could not be adverse during his lease, unless he gave actual notice to the other party that he occupied and claimed it as his own.

*Appeal from Jackson Circuit Court.*—HON. F. M. BLACK, Judge.

AFFIRMED.

*Chase & Powell* for appellants.

Inasmuch as no question had been raised as to the

title to the strip in suit for more than ten years, under purchase of June, 1870, and defendant all the while claiming and intending to own to the fence between enclosures, the title had vested in defendant, Richards, and having so vested, a subsequent dispute, if any, between plaintiffs and the defendant, could not divest defendant of his title. *Gray v. Yates*, 67 Mo. 601. The dividing fence between the two enclosures was erected before the defendant or witness, Goodman, bought in said block, and defendant bought and intended to buy the enclosure or lot of land then fenced. No testimony contradicts this, hence each instruction given is erroneous and on a wrong theory of the case. *Bradley v. West*, 60 Mo. 33 ; *Hamilton v. West*, 63 Mo. 93. This fence was not built for a temporary enclosure. It was built before defendant bought the enclosure. He never supposed it was not all his. He never intended to hold but a part of his enclosure until the true lines were determined, or until it was ascertained whether the land in the enclosure was his or not. No such thought was in his mind. He only thought it was his land, and he took possession of it as such, and made his improvements and built his sidewalks in front and his front fence. Hence the instructions given are on a wholly wrong theory of the case. 70 Mo. 373, 379. All the instructions given by the court and bearing upon the leasing of the enclosure south of the disputed strip, are erroneous. *Walbrun v. Ballen*, 68 Mo. 164 ; *Houk v. Batteen*, 68 Mo. 84. It is only in cases where the parties mistake or ignore the true line, without intending to claim beyond the true line, where the occupancy is not adverse. *Thomas v. Babb*, 45 Mo. 384.

*Karnes & Krauthoff* for respondents.

(1) The instruction given for plaintiffs asserted a proposition of law that has become a truism in the ju-

risprudence of this state. Whether the facts in this case presented an instance for the application of the rule announced was a question for the decision of the trier of the facts. The facts fully warranted the finding of the trial court and that finding is now conclusive. *Hucks-horn v. Hartwig*, 81 Mo. 648; *Cole v. Parker*, 70 Mo. 372; *Tamm v. Kellogg*, 49 Mo. 118, 122. (2) The instruction given by the court on its own motion, based on the theory that the defendant could not, in computing the period of his alleged adverse possession, include the time during which he was in possession of lot fifty-three, by the permission of Goodman, the plaintiffs' grantor, under a lease from him, asserted a proposition equally well settled. *Wilkerson v. Thompson*, 82 Mo. 317, 328, 330; Wood on Lim., sec. 269, p. 570, and sec. 270, pp. 574, 578, 579; *Baker v. Nall*, 59 Mo. 265; Wood on Lim., p. 552, note 2, pp. 556, 557; *Downer v. Ford*, 16 Cal. 345; *Ward v. McIntosh*, 12 Ohio St. 231. An adverse possession could not be originated while the occupancy was in subserviency to the true title, without a distinct notice to the true owner of such intention. Nor could a tenant continue an adverse possession previously commenced without such notice. By accepting the lease he acknowledges the lessor's title, and waives any rights acquired by him under a prior and incipient adverse possession. Tyler on Eject. and Adv. Enj. 880; *Corning v. Nail Factory*, 34 Barb. 485; *Tyler v. Heidorn*, 46 Barb. 439.

NORTON, C. J.—This is an action of ejectment to recover possession of a strip of land of the width of about three feet off of the north side of lot fifty-three, in McGee's addition to the City of Kansas. It appears from the record that both parties claim through one I. W. Thompson as the common source of title. Plaintiff, Belle H. Wilson, by various mesne conveyances, which were put in evidence, became, in 1881, the owner of lot

fifty-three, in McGee's addition to the City of Kansas, and defendant, Richards, in 1870, became the owner of lot fifty-two, in said addition, and entered into possession of the same, there being at the time a fence between said lots, and which remained standing up to the time of the trial of this cause. It is insisted by plaintiffs that this fence is not on the true line between said lots, but that it is placed two feet over the line on lot fifty-three; and it is this strip of land thus enclosed and in defendant's possession for which plaintiffs sue. Lot fifty-three is south of lot fifty-two, and the evidence tends to show, if it does not fully establish, the fact that the fence is about two feet over the true line on lot fifty-three.

This does not seem to be seriously controverted by the defendant, but it is insisted upon by him that, from 1870 up to the time suit was brought, he was in the open, notorious, adverse possession of the strip, claiming that the fence was on the true line. While there was evidence tending to show this, there was also evidence tending to show that the fence was placed where it was in ignorance of the true line, as Mrs. Goodman testified, that in 1883, defendant, Richards, said that he and Goodman (who was plaintiff's grantor) had set the fence where they supposed the true line was, and that Richards, upon then being asked by the witness, if he intended to claim more land than his lot, gave no answer. Goodman also testified, that he had made no arrangement with Richards concerning the line, and had had no occasion to agree or dispute about it, as Richards had occupied both lots most of the time, having rented from him lot fifty-three. The judgment was for the plaintiffs. The cause was tried by the court sitting as a jury, on the theory, as shown by the instructions that were given, that if the fence was placed, in 1870, where it was, in ignorance of the true dividing line, and there was no intention on the part of defendant, Richards, to claim beyond said line, and that Rich-

ards leased from Goodman lot fifty-three, entered into possession of the same and yielded up possession in 1875, a time within ten years next before the suit was commenced, that then defendant could not recover on the ground of adverse possession, even though Richards may have held said strip of land adversely ever since that date. And on the further theory that if Richards leased of Goodman lot fifty-three, and took and held possession thereof for several years, paying rent therefor, and the true dividing line was within the enclosure of lot fifty-two, of which he was also in possession, his possession of the strip of land in controversy was not adverse to Goodman during said lease, unless Richards in some way gave to Goodman actual notice that he occupied and claimed the strip as his own. The correctness of the theory on which the case was tried is fully sustained by the cases of *Huckshorn v. Hartwig*, 81 Mo. 648; *Tamm v. Kellogg*, 49 Mo. 118; *Wilkerson v. Thompson*, 82 Mo. 328, 330.

Judgment affirmed, in which all concur.