## MISSOURI LUMBER & MINING COMPANY v. JEWELL, Appellant.

### Division Two, December 22, 1906.

1. **EJECTMENT: Adverse Possession: No Evidence.** Defendant bought the improvements on a tract of land, but not the land itself. At that time he thought it belonged to the Government and was so advised, and wrote to the Land Office and was advised by it that the land had been granted to a named person. A year later he wrote to the patentee's grantee, and was informed that he owned the land, and would sell it, but would not execute a warranty deed for it. Thereafter he remained in possession, but there is no evidence that he, at the time he wrote to the grantee, was claiming adversely to him, nor does he say when his possession began to be adverse, but says that when the grantee refused to make a warranty deed he concluded he had as good a title as he or any one. The grantee paid the taxes. *Held,* that defendant's possession at its inception was not adverse, nor does the testimony indicate that his possession at any time after he wrote to the grantee was changed from a friendly to an adverse possession, and the burden being on defendant to fix the time when he began to hold adversely to the true title, the court properly gave a peremptory instruction for plaintiff.

2. ———: ———: **Friendly: Notice to Real Owner.** The defendant who relies on adverse possession, if his occupancy in its inception was permissive or friendly to the title, must show the actual knowledge of the real owner that he claimed in oppo-

sition to and in defiance of his title, or he must show that such occupancy or user was so open and notorious and inconsistent with and injurious to the rights of the true owner that the law will authorize from such facts the presumption of knowledge of such facts by the true owner.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans*, Judge.

Affirmed.

*A. H. Livingston* for appellant.

(1) Defendant took possession of the land at the time expecting to obtain the legal title thereto, and when he learned that no title could be had, other than a quitclaim, and that based on a tax title, and having lost money in tax titles, he then determined to hold and claim the land as his own. He claimed the land as his; it was called and known as his; he put valuable improvements thereon and had all the tract described in his answer actually inclosed for more than ten years before the institution of this suit. The court committed palpable error in directing a verdict for plaintiff. Boyce v. Railroad, 168 Mo. 583; Wilkerson v. Eilers, 114 Mo. 245; Miller v. Rosenberger, 144 Mo. 292; Hunnewell v. Burchett, 153 Mo. 440; Turner v. Railroad, 112 Mo. 542. (2) While appellant openly asserts his claim of ownership and the uncontradicted evidence shows that this fact was notorious, yet this was not necessary, or important, as his possession was open, continuous and notorious and this is everywhere held to be tantamount to claim of ownership. Boyce v. Railroad, 168 Mo. 583; Turner v. Railroad, 112 Mo. 542; Swope v. Ward, 185 Mo. 316. (3) If a peremptory instruction was proper under any circumstance on the whole case, it should have been given for defendant and not for plaintiff, but under the most favorable views for plaintiff the facts should have been

submitted to the jury under proper instructions on adverse possession.   Wolff v. Campbell, 110 Mo. 114; Mather v. Walsh, 107 Mo. 121.

*John C. Brown* and *Orr & Luster* for respondent.

(1)   Defendant's possession in its origin was in accord with or in subservience to the true title, and the presumption is that such possession continued friendly and subordinate.   Hunnewell v. Burchett, 152 Mo. 611; Hunnewell v. Adams, 153 Mo. 440; Pitzman v. Boyce, 111 Mo. 392; Pharis v. Jones, 122 Mo. 125; Crawford v. Ahrnes, 103 Mo. 88; Brown v. Simpson, 67 Texas 325; Davenport v. Sebring, 52 Iowa 364; Schleicher v. Gotlin (Texas), 20 S. W. 120; Norton v. Collins (Texas), 20 S. W. 1113; Land Company v. Rogers (Texas), 32 S. W. 713.   (2)   Acts or assertions which indicate a change in the character of the holding or some notice or knowledge of the change of the nature of the possession from a friendly or subservient to an adverse holding should be brought home to the true owner.   Pitzman v. Boyce, 111 Mo. 392; Budd v. Collins, 69 Mo. 129; Meir v. Meir, 105 Mo. 411; Estes v. Long, 71 Mo. 605; Wilson v. Lerche, 90 Mo. 473; Gordon v. Eans, 97 Mo. 603; Wilkinson v. Thompson, 82 Mo. 317; Hamilton v. Boggess, 63 Mo. 249.   (3) When possession in its inception is subordinate to the true title it cannot be converted into one of hostility by the mere intention of the party in possession, not expressed by acts which indicate a change in the character of the holding.   Hunnewell v. Burchett, 152 Mo. 611; Hunnewell v. Adams, 153 Mo. 440; Pitzman v. Boyce, 111 Mo. 392; Meir v. Meir, 105 Mo. 430; Budd v. Collins, 69 Mo. 129; Gordon v. Eans, 97 Mo. 603; Warcester v. Lard, 56 Mo. 265; Clarke v. Kinley (Texas), 25 S. W. 1096; Haffendorfer v. Gault, 84 Ky. 124; Lamb v. Fass, 21 Me. 240.   (4)   The burden is upon the defendant to show the exact time he began to

hold possession adversely and to also show that his change from a friendly to an adverse possession under his claim of ownership was by such acts as would indicate a change in the character of the holding, and that the real owner had knowledge of such act, or notice that appellant's possession had changed to an adverse holding.    Hunnewell v. Burchett, 152 Mo. 611; Hunnewell v. Adams, 153 Mo. 440; Pitzman v. Boyce, 111 Mo. 392; Budd v. Collins, 69 Mo. 129; Choteau v. Riddle, 110 Mo. 372; Harper v. Morse, 114 Mo. 317; Wilkinson v. Thompson, 82 Mo. 317; Hamilton v. Boggess, 63 Mo. 249.

GANTT, J.—Action of ejectment commenced July 1, 1903, for the west half of the northwest quarter of section 29, township 30, range 6, Shannon county, Missouri.

The petition is in the statutory form.    Ouster is laid as of January 2, 1902.    Defendant in his answer admits possession of part of the premises described, as follows, "Commencing twenty-seven rods south of the northwest corner of section 29, township 30, range 6, running thence south seventeen rods, thence southeast fifteen rods, thence south eighteen rods, thence southwest twelve rods, thence south fifty-eight rods, thence east eighty-eight rods, thence north seventy-five rods, thence west sixty-seven rods to place of beginning," but denies possession of any other portion of the lands described in the petition and disclaims all right, title or interest therein.    Defendant for further answer to said petition says that as to the land herein described he has been in the open, notorious and adverse possession thereof for ten years next before the institution of this suit, claiming to be the owner thereof; that plaintiff's right of recovery of such premises is barred.

The reply denied the new matter pleaded in the answer and every allegation thereof.

On the 18th day of September, 1903, the cause came on for hearing before the circuit court and a jury. At the close of all the evidence in the case, the court at the request of the plaintiff instructed the jury to return a verdict for the plaintiff, which was done. The defendant duly excepted at the time to the giving of said instruction. Within due time the defendant filed his motion for a new trial, assigning as a ground therefor that the court erred in sustaining the demurrer to the defendant's evidence and directing a verdict for the plaintiff, which motion the court overruled, and the defendant duly saved his exceptions.

The evidence on the part of the plaintiff showed a regular paper title by proper conveyances, beginning with a patent from the United States Government to John Smith for the land described in the petition, down to the plaintiff in the case. The plaintiff's immediate title consisted of deeds from Poppleton and Stout. The deed from Poppleton to plaintiff was dated December 26, 1901, and was recorded January 3, 1902, and the deed from Stout to plaintiff was dated December 30, 1901, and was recorded January 30, 1902.

Plaintiff then introduced C. C. Carlton, who testified that he was a surveyor and timber inspector of the plaintiff company, and had surveyed the land described in this suit, and that the defendant had about thirty-eight acres in the west half of the northwest quarter in cultivation. He made this survey about the 25th of April, 1903.

John Fleming testified that he was familiar with the land on which the defendant was living and that its rental value during 1902 and 1903 was from one dollar and fifty cents to two dollars per acre. He had known the place ever since it had been in cultivation, between fifteen and twenty years. On cross-examination he was asked "if the defendant had not claimed to own the land during the time he had known it?" and

he answered, "He claimed to own the land in some way, but I do not know how."

The defendant to sustain the issues on his part testified that there were about fifty or sixty acres of the land described in the petition inclosed; that he had lived on it since 1884; that when he first went on it, he bought the improvements from a man by the name of Pickett, who said it was vacant or Government land. There was a dwelling-house, stable and nine or ten acres fenced at that time; that was in the fall of 1884. He testified further: "My understanding was that it was vacant land; then I wrote to the Land Office and they told me that it had been entered by a man named Smith, and during the winter of 1884 a man by the name of Cook said that he believed the land was owned by Stout and Poppleton; I wrote Stout to know if he owned it, and he said he did, and he would take one dollar and twenty-five cents per acre for it, if it was the kind of land I had described; I wrote him that I would give him the money if he would send me a general warranty deed, and he wrote that he would not give a better deed than he had. Since then I have been claiming by right of possession."

On cross-examination he stated that he was an attorney and was admitted to the bar in 1896. Q. "You say you bought the improvements from Pickett when you went there?" A. "Yes, sir." Q. "He told you it was Government land?" A. "Yes, sir." Q. "When was that?" A. "In the spring of 1884." Q. "Then when was it that you wrote to Ironton?" A. "In the winter." Q. "And found out you were mistaken about it being wild land?" A. "Yes, sir." Q. "When was it you wrote to Stout and offered to buy the land?" A. "Sometime in May, 1885." Q. "Have you ever given this land in to the assessor?" A. "No, sir; I have offered to and they said they took it from the book." Q. "Did you ever pay any taxes on it?" A.

"Yes, sir, last fall." Q. "Did you ever pay any before that?" A. "No, sir; I could not, they were already paid." Q. "After you received that letter refusing to make a warranty deed, you say you claimed this land?" A. "Yes, sir." Q. "Why?" A. "Because I believed I had the best title." Q. "Did you say you thought it was Government land?" A. "Yes, sir." Q. "Then you tried to buy it?" A. "Yes, sir." Q. "You know Poppleton and Stout owned the land?" A. "Yes, sir." Q. "You wanted their title?" A. "Yes, sir." Q. "You had no other title?" A. "No, sir." Q. "Have you bought any since?" A. "No, sir." Q. "Did you ever examine the record to see who owned this land?" A. "No, sir; the record was burned up." Q. "The John Smith deed was not burned up?" A. "No, sir; I got it from Ironton." Q. "How long since the record was burned?" A. "I do not know." Q. "Now, is it not a fact that you went out there and bought these improvements and then when you found out it was not Government land you made up your mind to keep it?" A. "No, sir; I thought I had the best title to it." Q. "Why did you think so?" A. "Because they would not make me a deed to it." Q. "You never made an effort to get the land from any body but Stout and Poppleton?" A. "Yes, sir; the Government." Q. "Well, did you ever get a title from any body?" A. "No, sir; not by deed." Q. "You went into the possession of this land before you got the letter, 'Exhibit A?'" A. "Yes, sir; the fall before." Q. "And that fall you cleared twenty acres?" A. "About that." Q. "You did this before you got the letter from Stout?" A. "Yes, sir." Q. "Is this the letter?" A. "Yes, sir." The letter is in the following words:

"Ft. Scott, Kansas, June 4, 1883 or 1885.

"Mr. C. C. Jewell,

"Dear Sir:—In reply to yours May 24, our plats indicate we own the northwest section of 29 and 8; now, have Mr. Poppleton consent to a sale at $1.25 per acre, if there is no pine timber on it; but the general warranty deed will settle the question as we will not give any better deed than we got. He is in the country and knows all about the tax law. We all believe that we have a perfect title, but do not care enough about selling to give a better deed than we got.

"Yours respectfully,

"W. H. STOUT."

Green Connors for the defendant testified that he lived in Shannon county about twelve miles from the defendant. The defendant had been living there about nineteen years. Q. "Do you know what claim he has made to this land?" A. "Nothing only that he told me that he owned a place up there, which is known as the Jewell place." This was in substance all of the evidence.

I. As the plea of the Statute of Limitations rests entirely upon the defendant's own testimony, we must determine whether that evidence, accepting it as true, would as a matter of law have justified a jury in finding for the defendant. It is we think too plain for cavil or controversy that the possession of the defendant in its inception was not adverse. He bought the improvements on the land only and not the land itself, and says he was advised at that time that it was Government land or vacant. At that time he was not claiming any title or interest in the land and says he wrote to the Land Office and was advised by that office that the land had been duly entered by a man by the name of Smith. It is obvious he was not claiming adversely to the Government when he first went into possession, but on the contrary that he had bought the improve-

ments with the intention of purchasing from the Government, and was holding his possession in subordination to the Government. Afterwards, in 1885, after he had purchased the improvements and had cleared twenty acres of the land with the understanding that it belonged to the Government, he learned that Stout and Poppleton were the owners and thereupon he wrote to Stout at Fort Scott, to purchase the land from them, and was advised by Stout that they did own the land, whereupon he offered them $1.25 per acre for a warranty deed to the same, but Stout objected to giving a warranty deed and thereupon nothing else was done by the defendant about the title. There is not a word in his testimony or in his correspondence with Stout which tends to prove that he was claiming the title to this land adversely to the title of Stout and Poppleton at that time. On the contrary, every legitimate inference to be drawn from his testimony is that his possession in the beginning and at the time he was corresponding with Stout was in subservience to the true title and the presumption is that such possession continued friendly and subordinate until a change in the character of the holding was brought home to the true owner. [Hunnewell v. Burchett, 152 Mo. 611; Hunnewell v. Adams, 153 Mo. 440; Pitzman v. Boyce, 111 Mo. 392.]

It is true that defendant testified that he continued in possession, but we have looked in vain through his testimony to find any thing to indicate that the character of his possession, after his failure to obtain a warranty deed from Poppleton and Stout, had been changed into an adverse holding. Poppleton and Stout continued to pay all the taxes and there is no evidence that they were ever advised that defendant's possession had been changed into one adverse to their title. There is no evidence in this record when the defendant's possession became adverse to the plaintiff and its

grantors. The burden was upon the defendant to fix the time when he began to hold adverse to the true title. It was so ruled in Hunnewell v. Adams, 153 Mo. 440. In Hunnewell v. Burchett, 152 Mo. 611, it was said by this court: "The law presumes that every possession is rightful and consistent with, not in opposition or 'adverse' to, title and ownership. A party, therefore, who relies upon 'adverse possession' in order to rebut this presumption of possession consistent with the title of the real owner, must prove his possession to be 'adverse' to the title set up; that is, he must show the actual knowledge of the real owner that he claims in opposition to, and defiance of, his title, or he must show such an occupancy and user, so open and notorious, and inconsistent with, as well as injurious to, the rights of the true owner, that the law will authorize, from such facts, the presumption of such knowledge by the true owner. It is not the mere occupancy or possession which must be known to the true owner, to prejudice his rights, but its 'adverse character.'" The defendant having written to Stout and offered to buy the land from Stout and Poppleton, and making no claim of adverse possession or assertion of any title adverse to theirs, the same continued possession of the premises of appellant was not notice to them of any adverse claim on his part and while his possession of the part of the land which he actually occupied was open and continuous, under the circumstances it was not sufficient to overcome the presumption that he was still holding in subordination to their title. In Pitzman v. Boyce, 111 Mo. l. c. 392, it was said by this court: "The question first to be determined is whether the use was really adverse to the owner, or was it merely permissive in its character. If permissive in its inception, then such permissive character being stamped on the use at the outset will continue of the same nature, and no adverse user can arise until a

distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature, and exclusive and independent in its character. [Budd v. Collins, 69 Mo. 129; Estes v. Long, 71 Mo. 605; Wilson v. Lerche, 90 Mo. 473; Wilkerson v. Thompson, 82 Mo. 317.]"

The case of Swope v. Ward, 185 Mo. 326, cited by the defendant, is unlike the case at bar in that this court said that the possession in that case "was adverse in its inception." Neither is Boyce v. Railroad, 168 Mo. 593, opposed to the rule we have just stated. That case recognizes that the owner of the title should be notified of the adverse claim, but states that notice is unnecessary where the possession itself is necessary notice of the claim. The facts of this case as testified to by the defendant and his witnesses distinguish it from those cases in that here there was a friendly and subordinate possession in the inception, and the defendant himself in his offer to purchase the land from the true owners not only did not claim title to the land but evinced an anxiety to buy the title from them, and a total failure to show by any acts or words when his adverse possession, if any, began, or any change from a friendly possession in subordination to the true title to a hostile holding.

In our opinion the circuit court correctly held that upon the defendant's own showing his possession was not an adverse, open and notorious possession for ten years next prior to the institution of this action, and that the jury were properly instructed to return a verdict for the plaintiff.

The judgment of the circuit court is affirmed. *Burgess, P. J.,* and *Fox, J.,* concur.