STATE OF MISSOURI at the relation of UNITED MUTUAL INSURANCE ASSOCIATION, a Corporation, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and NICK T. CAVE, Judges of the Kansas City Court of Appeals.—162 S. W. (2d) 255.

Division One, April 16, 1942.

Rehearing Denied, June 3, 1942.

*Atwood & Atwood* and *Douglas Stripp* for relator.

*Walter J. Gresham* for respondents.

DALTON, C.—This is an original proceeding by certiorari to quash, for alleged conflicts, the opinion of respondents in the case of Howard W. Kelley, Administrator of the estate of Aurilla B. Ervin, deceased, v. United Mutual Insurance Association, 149 S. W. (2d)· 905.

Respondents stated the facts as follows: "This is a suit on four life insurance policies issued by United Mutual Insurance Association, hereinafter referred to as 'defendant,' upon the life of Buford W. Ervin, deceased, who will be referred to as 'insured.' Aurilla B. Ervin was the wife of insured and was named as beneficiary in the policies. Insured died on June 19, 1934, and this suit was instituted by Aurilla B. Ervin, but she has since died and the cause was revived in the name of Howard W. Kelley, her administrator, who will be referred to as 'plaintiff.' The cause was tried to a jury, resulting in a verdict for defendant. Plaintiff's motion for new trial was sustained 'because of error in defendant's instructions.'

"This is the second appeal of this cause to reach us, having previously been tried, resulting in a verdict and judgment for plaintiff, which judgment was, upon appeal to this court, reversed, and the cause

464

remanded. [Kelley v. United Mutual Insurance Association (Mo. App.), 112 S. W. (2d) 929.]

"The pleadings in the instant case are about as they were in the first trial. They are set out at length in the former opinion above cited, and we see no good purpose to be served by again setting them out in detail. Suffice it to say that plaintiff's petition is in five counts, the first four are each conventional in form, declaring upon the policies and pleading requisites of such cause of action. The fifth count of plaintiff's petition seeks to set aside a release in full executed by Aurilla B. Ervin on the ground of mental incompetency, and misrepresentation.

"Defendant's answer, as to each of the first four counts, is in conventional form, denying liability on the grounds of misrepresentation by insured in his application for insurance, and further pleads a compromise settlement and release; the answer to the fifth count alleged that the insured made certain false representations in his application for the insurance, and that after his death a controversy arose between the defendant and the beneficiary and that said controversy was settled and compromised and a release executed in accordance therewith. The false representations complained of were that the insured had a cancerous condition; that he was diseased and not in good health; and that he had not within two years prior to the making of the application received medical and surgical treatment, when in truth and fact all of those conditions existed at the time he made his application. The plaintiff filed a reply which was a general denial joined with a specific denial that there was any bona fide controversy and that she knew she was accepting the payment in full settlement of her claim, and that there was any consideration for the same, and again alleged that she was mentally unsound at the time and incapable of understanding the nature and effect of the transaction.

"At the close of all the evidence, the defendant offered an instruction in the nature of a demurrer which the court overruled, to which ruling the defendant excepted. Plaintiff requested but one instruction, which the court gave, submitting the case to the jury on the theory on which it had been tried, and his theory of the law applicable to the facts in the case." This instruction (149 S. W. (2d) 905, 906-907) directed a verdict for plaintiff for the balance of insurance claimed ($3,000) and interest, if the jury found the insured was in good health when the certificates were issued, and if they found the beneficiary was of unsound mind and defendant's representative knew of her incapacity, or had such information as would have put an ordinarily prudent person to the belief of such incapacity, at the time he induced her to sign the release.

Respondents stated the issues presented, as follows: "The defendant asserts that the court erred in setting aside the verdict (1) because defendant's demurrer at the close of the whole case should have been

sustained for various reasons; (2) because defendant's instructions were proper under the issues made by the pleadings and the theory upon which the case was tried and submitted."

"In urging that its demurrer at the close of the whole case should have been sustained, the defendant contends (a) that there was not sufficient evidence to prove insanity or to prove knowledge or notice thereof on defendant's part. We have examined the evidence introduced at this trial and find that it is substantially the same, concerning insanity, and the knowledge of defendant's agent thereof, as was introduced at the former trial, and in that case this court held that there was sufficient evidence of insanity and of knowledge of plaintiff's agent to submit such issues to the jury. [Kelley v. United Mutual Insurance Association (Mo. App.), 112 S. W. (2d) 929, l. c. 932, 933.]

"Defendant also contends that its demurrer should have been sustained because (b) the plaintiff did not tender a refund of the amount of the settlement before undertaking to escape the effect thereof on the ground of insanity and knowledge or notice of insanity by defendant's agent. This contention was directly passed on adversely to the defendant by this court in the Kelley case, supra, with authorities cited therein to sustain the ruling of the court."

Respondents then held: "We see no reason to depart from the ruling of this court on these matters as decided when this case was first here on appeal. We therefore hold that the trial court properly overruled defendant's demurrer at the close of the case. We have carefully read the cases cited by the defendant to support its contention that a refund or a tender of refund should have been made, but we do not believe those cases apply to the situation here, because there is found in those cases this qualification before requiring a tender, that the settlement must have been made 'without notice of the infirmity,' meaning insanity; while in this case, it was held in the former opinion, and we now hold, that there was sufficient evidence to submit to the jury the question of defendant's knowledge of beneficiary's insanity at the time the settlement was made, and therefore the settlement was not made, 'without notice of the infirmity,' and a tender was not necessary."

Since respondents incorporated by reference the opinion in Kelley v. United Mutual Insurance Association (Mo. App.), 112 S. W. (2d) 929, we look to it for the pleadings and additional facts. It will be noted that the said fifth count of the petition, with reference to the alleged settlement, alleges that "a representative of the defendant visited said beneficiary while she was ill and distracted . . . and while she was mentally distracted and in no condition to know what was being done or to understand the nature thereof, said representative delivered to her the sum of One Thousand ($1,000) Dollars instead of the sum of Four Thousand ($4,000) Dollars to which she was legally entitled, and fraudulently . . . obtained the signature of the

beneficiary to a release in full. . . ." It was alleged that "said release is void and of no effect," and "that by reason of said partial payment of One Thousand ($1,000) Dollars the defendant should be allowed credit in said sum upon his four causes of action as above set out." [112 S. W. (2d) 929, 930.] In defendant's answer to said count the following is included. "Defendant further says . . . that the plaintiff has ever since retained and still retains the said sum of $1,000 paid as aforesaid as a compromise and settlement and has not tendered or offered to tender back said sum to this defendant, and is hereby estopped from asserting any claim or right under or on account of said four certificates or policies or either thereof." [112 S. W. (2d) 929, 931.]

Plaintiff's reply, incorporated by reference in respondents' last opinion contained the following allegation: "Plaintiff says that said beneficiary was mentally unsound and incapable of understanding the nature and effect of the transaction, and that defendant's representative, with knowledge of such incapacity, induced her to sign said paper, and thereby obtained same through (sic) fraud in the factum."

It appears from respondents' former opinion that "the beneficiary, with whom the negotiations of settlement were had, was not under guardianship," but that there was "sufficient evidence of insanity to make insanity an issue of fact." Respondents stated the rule to be that "contracts made with such, in good faith and without knowledge of condition as to sanity, are not void, but are voidable;" and that "the general rule as to rescission of contract with an insane person not under guardianship is that the other contracting party must be placed in status quo." Respondents then held that "the rule as to restoration of status quo, of course, does not apply if one is held as bound of notice of insanity," and that "one cannot be excused of knowledge of insanity if sufficient opportunity to know is shown." Reference is made to 6 R. C. L., par. 319, pp. 935-938.

Relator's first point is directed particularly to respondents' holding under (1) (b), supra, as follows: "We see no reason to depart from the ruling of this court on these matters as decided when this case was first here on appeal. We therefore hold that the trial court properly overruled defendant's demurrer at the close of the case." Relator contends that the controlling decisions of this court hold that "one seeking to repudiate a release executed for a valid consideration in an action at law for that purpose, must allege and prove a tender back of the consideration thus received, absent which he cannot maintain his action," and that respondents have held to the contrary in their opinion in the above case, "in this, that it upheld the action of the trial court in overruling defendant's demurrer to the evidence at the end of the case in which these elements were wanting." Relator says that the respondents have approved a submission and authorized the repudiation, in an action at law, of a release executed for a valid

consideration, without there being either allegation or proof of a tender back of the consideration received.

Respondents in reply contend first that the record fails to show that the holding, supra, "was based upon the ground that tender need not be pleaded or proved." Respondents say "this is an entire misapprehension of what was ruled" and insist that the holding is "based solely on the well established legal principle that the law of the case laid down on the former appeal controlled the circuit court in the second trial of the case upon substantially the same facts;" that "such being the case, the trial court could do nothing else than overrule the demurrer to the evidence, and its action in so doing could not be error, regardless of whether the ruling on the former appeal was sound or unsound;" and that "relator has cited no decision of this court which holds that a circuit court can be convicted of error in overruling a demurrer to the evidence, following a ruling of an appellate court that such demurrer should be overruled." Respondents then quote from State ex rel. Winkle Terra Cotta Company v. U. S. F. & G. Co., 328 Mo. 295, 40 S. W. (2d) 1050, 1052, as follows: " 'The circuit court on the retrial followed the rulings in the former case, which became the law of the case. Those questions therefore adjudicated in the former opinion are not open for re-examination on this appeal.' " Respondents further insist that none of the cases relied upon by relator "had to do with the action of a trial court in following an opinion on a former appeal of the same case, nor . . . rule on the question of tender when a release has been obtained from an incompetent with notice of the disability." Respondents say that "relator's whole contention of conflict concerning tender is based on their invocation of the general rule established by the court, namely, that when fraud is in the inducement to a contract, what is received under it must be tendered back before a suit at law is filed." Respondents then make the contention that "the present rule concerning tender is unsound and ought to be overruled." [See: 9 M. B. J. 269, 270.]

Although respondents reached the same conclusion on the issue of a submissible case that they reached in the prior opinion, yet if their opinion is in conflict with controlling decisions of this court it should be quashed. If the prior decision was erroneous, correction should have been made on this appeal. [Poe v. Illinois Central R. Co., 339 Mo. 1025, 99 S. W. (2d) 82, 83; Dunn v. Alton R. Co., 340 Mo. 1037, 104 S. W. (2d) 311, 314.] A failure to do so would be a failure to follow controlling decisions of this court.

It appears from respondents' opinion that plaintiff's case was submitted to the jury upon the theory that the beneficiary at the time of the settlement was of unsound mind and that "defendant's representative knew of such incapacity . . ., or that he had such information with respect thereto as would put an ordinarily prudent person to the belief of such incapacity, . . . and . . .

that he induced her to sign said release while in such mental condition." [149 S. W. (2d) 905, 906-907.] Defendant's instruction "J" recognized that such was plaintiff's theory. [149 S. W. (2d) 905, 907-908.] It further appears that plaintiff pleaded the facts with reference to the alleged settlement and credited the payment therefor as a "partial payment," for which "defendant should be allowed credit," and sought to recover the balance claimed and without there being either pleading or evidence that a refund or tender of the amount paid in the alleged settlement had been made to defendant prior to the institution of the suit.

We consider now the cases relied upon by relator to establish conflict. Relator contends that "a plaintiff *before bringing his action* to avoid a release for insanity or other cause must allege and prove a tender back to the other party of the money received from the release," (Italics ours) and cites the following: Althoff v. Transit Co., 204 Mo. 166, 170, 102 S. W. 642; Jarrett v. Morton, 44 Mo. 275-6; McCoy v. McMahon Const. Co. (Mo. Sup.), 216 S. W. 770, 772; State ex rel. Order of the United Commercial Travelers of America v. Shain, 339 Mo. 903, 98 S. W. (2d) 597, 602; McKenzie v. Donnell, 151 Mo. 461, 467, 52 S. W. 222; Jamison v. Culligan, 151 Mo. 410, 416, 52 S. W. 224; Wells v. Mutual Benefit Assn., 126 Mo. 630, 637, 29 S. W. 607; Wiggington v. Burns (Mo.), 216 S. W. 756, 759. A very careful consideration of these cases discloses that none of them rule the precise question considered by respondents. Some of said cases do not involve releases by alleged incompetents. Some are actions at law and some in equity, and in any case the rule contended for does not apply in equity. [Haydon v. St. Louis & San Francisco R. Co., 222 Mo. 126, 134, 121 S. W. 15.] The cases do announce certain general principles, about which there is no dispute, and some of them contain general statements that appear applicable here, however, in determining conflict, general statements in opinions are to be taken in the light of the facts ruled. [State ex rel. K. C. Pub. Serv. Co. v. Shain, 343 Mo. 1066, 124 S. W. (2d) 1097, 1098; State ex rel. Lashly v. Becker, 290 Mo. 560, 235 S. W. 1017, 1027.] Relator takes the position that, since a contract made by an insane person, not in ward, is only voidable, rescission and tender prior to suit is necessary in all cases, and particularly in the case under consideration, for plaintiff to maintain his action on the original cause. The cases cited do not sustain this position.

In the case of McCoy v. McMahon Const. Co., supra, this court said: "Before the rule requiring tender before suit becomes applicable there must be a release. If the instrument or agreement relied upon never existed in fact or is void at law, no tender can be required. Fraud in the factum renders the contract void, and no tender is necessary. Fraud in the treaty renders it merely voidable, and, *absent some other ground dispensing with the rule,* tender is prerequisite to an action on the original cause." (Italics ours.)

In the case of Jamison v. Culligan, supra, this court said: "But a deed is not void merely because it was executed by an insane man, not under legal guardianship. It is voidable under conditions that will satisfy the demands of equity; but those conditions must appear on the face of the petition, and they must be sustained by the proof. It must appear upon the face of the petition *either that the defendant knew that the man with whom he was dealing was insane, and took advantage of him,* or else, if he dealt with the insane man without knowledge of his misfortune, and dealt fairly, the petition must show both an ability and a willingness on the part of the plaintiff to put the defendant in statu quo." (Italics ours.)

In the case of Wells v. Mutual Benefit Association, 126 Mo. 630, 637, 29 S. W. 607, an alleged insane person, not under guardianship, had made a settlement and surrendered an insurance certificate issued by defendant to him. After the insured's death the said proceeds of the settlement were used to defray funeral expenses and used for the family. The widow then sued on the certificate and alleged the incompetency of her husband to make the settlement, but *did not claim that defendant knew of such incompetency,* neither did she tender or allege a prior tender of the proceeds of the settlement. The court said: "It thus seems clear that Wells had the right to surrender his certificate, and to contract to do so for a moneyed consideration, and that the contract should be upheld, unless he was at the time insane, or so sick in body and mind as to render him incapable of entering into such a contract, and, by reason thereof, it was voidable at the pleasure and will of the beneficiaries in the certificate. . . .

"As the petition in his case contains no averment that Hasten Wells, at the time of the execution and surrender of the certificate of membership, was insane and under guardianship, it should have alleged a willingness upon the part of plaintiff to pay all premiums due by Wells at the time of his decease and to refund to defendant the money received by her husband and herself upon the surrender of his certificate of membership in the defendant association, which we think necessary in order to state a good cause of action, and that the judgment should be reversed, because of its failure to do so, unless the defects in the petition were waived by defendant by virtue of said oral agreement and stipulation, or were cured by the finding and judgment of the court." [126 Mo. 630, 637-638.]

We need not determine whether what was stated in any of said cases was correct, nor whether they were properly decided, it is sufficient to say that none of the cases cited rule a case where it was alleged that at the time the settlement was made and the consideration paid, the payor knew, or should have known, that the person induced to sign the release was incompetent and where such allegation was supported by sufficient evidence to make a submissible case. We find no case decided by this court, and our attention has been called to none, wherein, in such type of case it has been held that the consideration must

be returned or tendered prior to suit and that such fact must be alleged in order to state a cause of action on the original cause and the allegation be supported by evidence to make a submissible case.

The cases relied upon by relator, while not decisive of the question considered by respondents, do set forth certain general principles of law in line with the weight of authority, as for example: "The weight of authority supports the view that the contracts and conveyances of an insane person, made prior to an adjudication of his insanity, are voidable to the extent that, subject to certain conditions, they may be disaffirmed by him, but that they are not void, and they remain in full force and effect until disaffirmed." [28 Am. Jur. 693, Sec. 56; 32 C. J. 730; Sec. 501.]

"The great weight of authority . . . supports the rule that where a contract with an insane person has been entered into in good faith, without fraud or imposition, for a fair consideration, of which the incompetent has received the benefit, without notice of the infirmity, and before an adjudication of insanity, and has been executed in whole or in part, it will not be set aside unless the parties can be restored to their original position." 28 Am. Jur., p. 716, Sec. 84; 32 C. J. 734, Sec. 510.]

It does not follow from the decision in any of the cases cited by relator that respondents' holding, supra, is either in conflict with decisions of this court or that the holding is out of line with other authorities. In 17 C. J. S. 920, Sec. 438, the rule is stated as follows: "A good faith contract made with one of unsound mind although not adjudicated to be insane, if fair and reasonable, cannot be avoided or rescinded if both parties cannot be put in statu quo, but if the contract is made by one who knows of the other's incompetency restoration of the statu quo is unnecessary." [See, also: 32 C. J. 737, Sec. 516; 28 Am. Jur., Sec. 90, pp. 724, 726; 12 Am. Jur. 1031, 1034, Sec. 451; 23 R. C. L., pp. 411-414; 53 C. J. 1236, Sec. 54; 32 C. J. 748, Sec. 540 (conveyances).]

In 28 Am. Jur., Sec. 91, p. 727, it is said that, "a contract or conveyance may be avoided for incompetency without reference to whether the party who dealt with the incompetent had such knowledge or information as to raise a suspicion that the other party was insane. Knowledge of insanity, however, is material to the extent that a contract made with an incompetent by one who knew that the former was insane may be avoided without a return of the consideration received by the incompetent."

In the case of Halley, by Guardian, v. Troester, 72 Mo. 73, plaintiff was permitted to recover his ward's horse in replevin without producing or tendering to defendant the mare his ward had received in exchange therefor, where it was apparent to a person of ordinary prudence that Halley had no capacity to make a contract, and where there had been no adjudication as to such capacity at that time of the trade. An instruction that plaintiff could not maintain

the action without tendering defendant's mare and demanding rescission was held properly refused. [See: Hubbard v. Lusk (Mo. App.), 181 S. W. 1028, 1029, 1031 (5); Edwards v. Morehouse Stave & Mfg. Co. (Mo. App.), 221 S. W. 744, 746; Loveless. v. Cunard Mining Co. (Mo. App.), 201 S. W. 375, 383; Girard v. St. Louis Car Wheel Co., 123 Mo. 358, 368, 370, 27 S. W. 648; Rau v. Robertson (Mo. Sup.), 260 S. W. 751; Tender as Condition of Action-Release, 134 A. L. R. 6, 68.]

See, also, Forsythe v. Horspool (Mo. App.), 49 S. W. (2d) 687, 691, with reference to plaintiff recovering on his cause of action without tendering back the consideration received in a settlement made while he was incompetent and when the adjuster "evidently knew that he was in no condition mentally to realize, comprehend, or understand the nature and character of the transactions he was performing." Opinion quashed on other grounds. [State ex rel. Horspool v. Haid, 334 Mo. 196, 65 S. W. (2d) 923.]

In this proceeding we do not determine whether respondents' holding, that the trial court did not err in overruling defendant's demurrer to the evidence, was correct or not, but we do hold that said ruling was not in conflict with any controlling decision of this court to which our attention has been directed.

▌ Relator next contends that "in holding that the giving of relator's instructions 'D' and 'J' *constituted reversible error* respondents failed to follow the last controlling decisions of this court." Relator says that "Instruction 'D' withdrew the abandoned issue of want of consideration;" and that "if Instruction 'J' reinjected that issue, relator's defense was thereby made more burdensome, and the plaintiff was not prejudiced." Both instructions are set out in respondents' opinion (149 S. W. (2d) 905, 907), and it further appeared that the trial court had granted a new trial "because of error in defendant's instructions." Respondents stated the instructions were inconsistent and confusing to the jury and that "Instruction 'J' in effect required the plaintiff to have actually returned the money received in settlement to defendant." Respondents held that "the trial court was justified in sustaining plaintiff's motion for a new trial because thereof." It is apparent, therefore, that respondents did not hold that the giving of the instructions *constituted reversible error,* but only that the error was such that the action of the trial court in granting a new trial would be sustained. [See, Reichmuth v. Adler, 348 Mo. 812, 155 S. W. (2d) 181, 182 (and cases cited); Reich v. Thompson, 346 Mo. 577, 142 S. W. (2d) 486, 491.] Relator contends that "the last controlling opinions of this court are to the effect that a party to an action cannot complain of instructions which contain error in his favor;" that "it is a fundamental principle that one alleging error by reason of an instruction must show prejudice therefrom;" that "a party cannot complain of an instruction more favorable to him than that to which he is entitled;" that "the giving of an

instruction which only serves to cast an additional burden on the party requesting it is not prejudicial to the opposite party;'' and that ''relator merely invited an unnecessary obstacle to its defense.'' Relator insists respondents have held ''that regardless of prejudice to plaintiff's cause the case should be sent back for a new trial;'' and ''that the plaintiff was prejudiced by the inclusion in the instruction of an abandoned issue.'' Relator says, ''it is difficult to see how the plaintiff could have been prejudiced by confusion on an issue which he had abandoned.''

None of the cases relied upon by relator even involved an appeal from an order of the trial court granting a new trial. What this court would have held, if the trial court had granted a new trial in said cases, was not decided. In each of the cases relied on, the motion for a new trial had been overruled. The language of courts in approving the action of a trial court in refusing a new trial should not be confused with language applicable to cases where a new trial has been granted. [Sofian v. Douglas, 324 Mo. 258, 23 S. W. (2d) 126, 129 (3).] The decision of respondents in the instant case cannot be said to conflict with any of the decisions relied on by relator.

Relator contends that respondents' holding with reference to Instruction ''J'' conflicts with controlling decisions of this court. Instruction ''J'' told the jury ''that if you find that after she received said money she retained it knowing the source and the manner in which it was obtained and she spent said money and did not return it to the defendant, then your verdict in this case must be for the defendant notwithstanding you may find that she did not fully understand and realize what she was doing at the time of such settlement.'' Respondents held the instruction was too broad and that ''if this case should again be tried that requirement (as to refund of money received) should be modified to the extent that the plaintiff should have returned, or offered to return, the money to the defendant, after recovering, if she did, and fully realizing the source and manner by which it came to her possession.'' [Kelley v. United Mut. Ins. Assn., supra (149 S. W. (2d) 905, 908).] Relator says that ''the tender referred to in this connection was neither pleaded nor proven, and instructions must not be broader than the pleadings and the evidence.'' Relator relies on Rucker v. Alton R. Co., 343 Mo. 929, 127 S. W. (2d) 24, 26, and other cases that merely deal with the general rule, supra, and none are cases involving suggestions as to modifications of instructions in the event of another trial. They are, therefore, not decisive in the instant case.

Apparently, the closing portion of Instruction ''J'' was intended to submit the question of ratification after recovery from disability or estoppel (see, also, defendant's answer, 112 S. W. (2d) l. c. 931) and the modification suggested by respondents was directed to a proper submission of an issue actually submitted to the jury by defendant. The suggestion was with reference to the submission of an affirmative

defense and not with reference to plaintiff's right to submit his cause of action without pleading or evidence as to the return or tender of the proceeds of the settlement prior to the institution of plaintiff's action. Respondents' suggestions cannot be said to be in conflict with the decisions relied upon for the further reason that there is necessarily no certainty as to what the pleadings and evidence would be on a retrial of the cause, and it would be assumed that the suggestions were subject to the well known rule that instructions must be within the purview of the pleadings and evidence on such trial. In any case the particular matter complained of was not ruled by this court in any of the cases relied on and no conflict is shown.

Relator finally contends that respondents' opinion conflicts with controlling decisions of this court in that respondents held defendant's Instruction ''F'' should not have been given. This instruction advised the jury ''that the law presumes that every person is sane and understands the business or transactions in which he takes part until the contrary is proved.'' [149 S. W. (2d) 905, 908.] Apparently ''F'' was one of defendant's instructions considered by the trial court when granting a new trial for ''error in defendant's instructions.'' Respondents said: ''It is well settled in this State that where the evidence is conflicting with respect to presumptions of fact as they relate to questions to be submitted to the jury for their determination, it is improper to include the presumption in an instruction.'' Respondents accordingly held that Instruction ''F'' should not have included the matter concerning the presumption of sanity.

Relator contends that ''all persons not under guardianship or other legal disability are presumed to be sane in contemplation of law until evidence is adduced indicating the contrary, which evidence must satisfy a jury.'' [Relator cites State v. Palmer, 161 Mo. 152, 168, 61 S. W. 651; Fendler v. Roy, 331 Mo. 1083, 58 S. W. (2d) 459, 464; State v. Corrington (Mo. Sup.), 116 S. W. (2d) 87, 88; State ex rel. Bartlett v. Littrell, 325 Mo. 35, 26 S. W. (2d) 768, 769; State v. Barker, 216 Mo. 532, 545, 115 S. W. 1102; State v. Redemeier, 71 Mo. 173, 174.] Relator insists that ''it is proper to call the jury's attention to such a presumption (presumption of sanity) in an instruction'' and says that ''a party to a suit is entitled to an instruction on the question of a legal presumption arising in his favor, and that is what respondent denied relators in this case. Actions in negligence based on the res ipsa theory are outstanding examples.'' We assume relator, by the last sentence, refers to the situation prior to McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, 561, and Harke v. Haase, 335 Mo. 1104, 75 S. W. (2d) 1001, 1002. Relator does not contend ''that a legal presumption of sanity is conclusive,'' but insists that respondents have failed to ''distinguish between the legal presumption of sanity which attends all persons sui juris, absent evidence of insanity, and the inference that may arise from facts tending to show insanity.''

In State v. Palmer, supra, an instruction in a criminal case was approved to the effect that "every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proven." The Fendler case, supra, holds that ▮▮▮▮ "sanity and competency, like honesty and fair dealing, is supported by a legal presumption, and one alleging insanity and incompetency must sustain the burden;" also, that "if general insanity is admitted or proved to exist, it is presumed to continue." In State v. Corrington, supra, the court said: "The law presumes every adult person to be of sound mind and capable of committing a crime, and such person, when charged with the commission of crime, must rebut such presumption by evidence. . . ." In State v. Barker, supra, it is said that "the State may rest upon the legal presumption of the sanity of the accused until he shows to the contrary." In State v. Redemeier, supra, the court said: "The law presumes every person to be of sound mind until the contrary is shown." The Fendler case, supra (58 S. W. (2d) 459, 466), the Corrington case, supra (116 S. W. (2d) 87, 88), the Redemeier case, supra (71 Mo. 173, 174), and the Barker case, supra (216 Mo. 532, 545) all refer to the question of insanity or sanity as one of fact.

We are of the opinion that respondents' holding that Instruction "F" is erroneous is in accord with the last controlling decisions of this court. The evidence was conflicting on the issue of fact as to the sanity of the beneficiary at the time of the settlement. The rebuttable presumption of sanity, therefore, went out of the case insofar as a jury was concerned and had no place in an instruction. [Bailey v. Bailey (Mo.), 11 S. W. (2d) 1026; McKenna v. Lynch, 289 Mo. 16, 233 S. W. 175, 176; Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S. W. (2d) 710, 720; Badger Lbr. Co. v. St. L. & S.-F. R. Co., 338 Mo. 349, 89 S. W. (2d) 954, 960; Fields v. Luck, 335 Mo. 765, 74 S. W. (2d) 35, 43, 44; Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S. W. 1043, 1048.]

In the case of Stack v. General Baking Co., 283 Mo. 396, 223 S. W. 89, 97, this court said: "The general rule, always recognized in this State, is that, where evidence exists in proof of a given state of facts, all presumptions in relation to it vanish and cannot be indulged."

In Rodan v. St. Louis Transit Co., 207 Mo. 392, 405, 410, 105 S. W. 1061, the court said: "A presumption, therefore, of a rebuttable character, such as here (exercise of care), only remains in force until repelled by contrary evidence. It follows that, when the evidence is contrary to the presumption invoked, the presumption itself cannot be laid hold of for use in administering justice in a particular case."

In the case of State ex rel. Detroit F. & M. Ins. Co. v. Ellison, 268 Mo. 239, 255, 257, 187 S. W. 23, 26, referring to a rebuttable presumption, this court said: "The presumption itself is not evidence. It is not a thing to be 'overcome' by evidence in the sense that it, of itself, adds anything to the strength of the evidence invoking it."

Having, therefore, reached the conclusion that respondents' opinion does not conflict with the controlling decisions of this court, it follows that our writ of certiorari was improvidently issued and should be quashed. It is so ordered. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.