M. B. CRIDER, Appellant, v. CARRIE M. MEATTE ET AL.—7 S. W. (2d) 691.

Division Two, June 21, 1928.

476

*Von Mayes* for appellant.

*Ward & Reeves* and *Russell & Oates* for respondents.

DAVIS, C.—This is a suit to ascertain and determine title to real estate, commonly known as a suit to quiet title. From a decree rendered by the court in favor of defendant, plaintiff appealed.

The petition avers that plaintiff owns and possesses lots 17 and 18 in block 28 of the original town of Hayti, Pemiscot County; that defendants claim some interest therein by virtue of a warranty deed purporting to have been signed and executed by plaintiff but denied by her, which was a voluntary conveyance on the part of her husband without consideration. It further avers title in plaintiff by adverse possession, praying the court to ascertain and determine the title and to set aside and cancel the warranty deed, and for general relief.

Defendants, after a general denial, deny that plaintiff owns or possesses the north fifty-two feet of said lots, admitting, however, that they claim title to said fifty-two feet, but disclaiming ownership

as to the remaining portion of said lots. They further aver that the other defendants herein have conveyed title to defendant Carrie M. Meatte, and that she now has full title to said fifty-two feet. The reply is a general denial.

It seems to be conceded that the evidence adduced warrants the finding that by warranty deed, dated February 11, 1911, plaintiff acquired title to said lots 17 and 18 from Fred Morgan and wife. At that time there were buildings on the south and north end of the lots. On May 24, 1913, fire destroyed the building on the south end, in which W. P. Meatte, husband of defendant, was then conducting a saloon. Shortly thereafter W. P. Meatte began running a saloon in the building on the north part of the lots. There is a warranty deed on record, dated May 27, 1913, according to which plaintiff and her husband conveyed the north fifty-two feet of said lots to W. P. Meatte, for a recited consideration in the deed of $2500, which was recorded December 5, 1913. W. P. Meatte thereafter conducted a saloon in said building on the north portion of said lot until February 24, 1914, when that building also burned. J. G. Crider, the husband of plaintiff, died in 1914, and W. P. Meatte, the husband of defendant, died about six months before the trial of this case. W. P. Meatte, paid rent to plaintiff or her husband while he occupied the building on the south part of the lots, but the record is without evidence that he ever paid rent to either of them after he moved into the building on the portion in controversy. The structures were not rebuilt after the fires, the lots remaining vacant thereafter.

The evidence adduced on the part of plaintiff would warrant the finding that she paid the taxes on the whole of lots 17 and 18 from 1911 thereafter. That during all this time she claimed the property. It was not until after W. P. Meatte's death that she learned that a deed was recorded conveying the north fifty-two feet to him, or that defendant was claiming an interest therein. Plaintiff moved from Hayti to Caruthersville in 1918, leaving the property in the hands of agents. Occasionally the lots were used for tent shows and at other times she allowed the churches to place stands thereon. The fifty-two feet in question were used by the public for a hitching yard. She had no personal knowledge of any one ever paying her rent on the fifty-two feet in controversy, or on the other portion of the lots, because her agents failed to tell her on what property they were collecting rent. A concrete walk on the south and east side of said lots was constructed before the deed to W. P. Meatte was executed. She refused to swear that she signed the deed, purporting to be executed by herself and husband, dated May 27, 1913, to W. P. Meatte, because she could not say it was her signature and she had no recollection of ever signing it, although the signature bears some

resemblance to her signature. An expert witness for plaintiff testified that, in his opinion, the plaintiff signed the deed dated May 27, 1913, in which W. P. Meatte is the grantee. Another witness for plaintiff testified that he took the acknowledgment to the deed made by the plaintiff to Meatte, and after reading the deed and acknowledgment, which was in his handwriting, he would say that he took plaintiff's acknowledgment to that deed. He further stated that the lots for several years past had been used as hitching yards, and for carnival and tent shows. He had never heard either plaintiff or defendant's husband make any claim to the fifty-two feet in controversy after May 27, 1913.

Testimony of other witnesses tended to show that they had never heard W. P. Meatte speak of or claim the fifty-two feet in controversy, but that plaintiff always claimed these lots, including the portion in controversy. They testified that it was generally reputed among the citizens of Hayti that plaintiff owned the lots. They also testified, relative to consideration, that Meatte wanted the deed so as to get possession of the building on the north portion to operate a saloon, which at that time was occupied as a restaurant. In order to obtain possession plaintiff's husband and Meatte thought it best that the latter should have a deed, and that this was the purpose of making the deed. Only the south portion of said lot was used for carnivals and church purposes. Another witness for plaintiff testified that he heard W. P. Meatte say in his lifetime that Crider had made him a deed to the back part of these lots, but that he did not pay Crider anything for the deed and that the deed never had been recorded. Still another testified that W. P. Meatte told him that he had a deed to the back end of these lots, but that he never paid taxes on the property and never paid anything for the deed. Dr. Crider gave him the deed to obtain possession of the place, and he never had the deed recorded. Meatte told him that some one approached him to buy the property, but he informed him that he had not bought the property and would not sell it. That his purpose in getting the deed was to get possession. That they had trouble in getting possession. He saw Dr. Crider hand Meatte a paper, which Crider said was a deed to get the man conducting the restaurant out of possession.

About six years before the trial a fence was built around a portion of the property to keep horses and wagons out, but it disintegrated about two years prior to the trial. The county collector stated that his books from the year 1918 show that plaintiff had paid taxes on both lots until the year 1924. In 1924, defendant paid taxes on the rear fifty-two feet. Plaintiff, however, that year paid taxes on the whole of said lots, because they were not separated. The fifty-two feet was never set off to itself, so that it should be separately

assessed. Lots 17 and 18 are carried on the books as whole lots and the taxes were paid on the lots as a whole, and they were so assessed prior to 1924.

The defendant's evidence warrants the finding that plaintiff and her husband executed a warranty deed to W. P. Meatte, the husband of defendant, dated May 27, 1913, acknowledged before B. F. Allen, justice of the peace, and filed for record December 5, 1913, which recited a consideration of $2500 and conveyed the north fifty-two feet of said lots 17 and 18. There was also offered in evidence a quit-claim deed from defendant's co-defendants, conveying to her their interest in the fifty-two feet in controversy, and that said grantors were the only heirs of W. P. Meatte. A witness for defendant testified that he heard Dr. Crider say, immediately after the first fire, that he had sold to Meatte that building over there. Another witness stated that he was working for Meatte in 1917 and 1918, and during that time he heard Meatte make a trade with some show people for the use of the back part of these lots, at which time Meatte was claiming the property. Another witness, an attorney for defendant but theretofore a representative of plaintiff in the handling of her property, stated that he never rented the two lots for plaintiff, but that he had rented other lots for her. That after the fire the rear fifty-two feet was always used as a public hitching yard. He stated the two lots were known as the Crider lots, although he had never heard either plaintiff or her husband make any claim to the fifty-two feet in question after the deed to Meatte.

Another witness for defendant testified that he was employed in the barber shop close to the lots in controversy, and that he heard Meatte say about a month before his death that he had fifty feet, or something like that, on the rear end of these lots, but that he did not intend to bother with it while he lived, and if he died, it would go to his family. He also heard Meatte say that he saved $200 by not having to buy another license when he moved on the fifty-two feet, and that he paid an additional $500 for the building.

Plaintiff stated in rebuttal that Mr. Duffy, while he was mayor in 1919, put a fence around these lots to keep people from driving wagons thereon, and this fence stayed there two or three years, and was never replaced after disintegration. Other pertinent facts, if any, will later be noted.

I. The petition avers ownership of the lots in plaintiff and the existence of a recorded warranty deed clouding her title, but denies that plaintiff signed or executed it, and prays its cancellation. The averment is synonymous with a charge of forgery or spuriousness, which, with the prayer for cancellation, determines the proceeding a suit in equity. Consequently,

equitable procedure applies, resulting in the cause being triable here *de novo,* and casting the burden of finding the facts on this court. Instructions, therefore, are out of place and their presence or absence will be disregarded.

II. It is said that the record is without substantial evidence to sustain the judgment. The principal phase of this contention is based on the lack of evidence that plaintiff delivered or authorized the delivery of the deed to Meatte. The authorities are in accord that delivery is essential to the validity of a deed and without it all other formalities are ineffectual. We may infer from the facts that plaintiff's husband conducted the negotiations. The evidence directly shows that he delivered the deed to Meatte, who forthwith took possession of the premises in dispute. It was clearly established, we think, that plaintiff and her husband signed and acknowledged the deed. However, the record is mute as to whether plaintiff expressly gave or denied her husband authority to deliver the deed, necessarily so, for she stated she had no recollection of ever signing it. She testified that Meatte paid rent while in possession of the building on the south part of the lots until fire razed it, but failed to mention that Meatte paid rent while occupying the building on the north portion of the lots, which comprises the portion in controversy, and we may assume that he did not. Moreover, plaintiff failed for more than ten years to assert her rights. Therefore, when the facts developed that plaintiff's husband conducted the negotiations and manually delivered the deed to Meatte, which deed describes the identical property and shows a substantial consideration, that Meatte immediately took possession of the premises and later recorded the deed, with a lack of showing that Meatte paid rent for the premises, and that a great length of time elapsed before plaintiff instituted suit, in the absence of evidence impeaching the bona-fides of the transaction, a prima-facie case was made that plaintiff authorized her husband to deliver the deed to Meatte.

Plaintiff, however, questions the good faith of the transaction. She asserts that the evidence establishes that Meatte was given the deed in order that the tenant in possession might efficaciously be evicted. She bases her position on the statements of witnesses that Meatte desired a deed to evict the occupant; that he said he had not bought the property; that he had not paid anything for the deed, and that he had not recorded it or paid taxes. However, to impeach a deed regular on its face and showing a substantial consideration, cogent and satisfactory evidence is required. To refute whatever force, if any, this evidence may have is the lack of evidence that Meatte attorned to plaintiff and paid her rent and the substantial consideration of the deed itself, which deed, we assume, acknowledged the re-

ccipt of the consideration, for plaintiff's abstract, which hardly more than refers to it, states that it is conceded this deed conveyed the title at the time to W. P. Meatte, provided plaintiff executed it and authorized its delivery and her signature was obtained without mistake or fraud. Furthermore, there is direct evidence that Meatte paid a substantial consideration; on the other hand, plaintiff was mute as to whether any consideration was paid. Considering all the facts and circumstances, we think the conclusion is probable that the transaction was a bona-fide sale and that plaintiff authorized her husband to deliver the deed to Meatte. This conclusion is accentuated by plaintiff's silence respecting the receipt of either the rent or consideration, and respecting an effort made, resulting in failure to enforce collection.

III. Plaintiff avers that a deed absolute on its face may be construed to be a mortgage or a lease, citing Stephens v. Stephens, 232 S. W. 979. She fails to further elaborate the averment. The cited case holds that, to establish such a deed a mortgage or a lease, clear and convincing evidence is necessary. We think the evidence not only fails in that regard, but fails to develop a scintilla of evidence upon which the rule could operate.

IV. Plaintiff raises in her brief issues of fraud and mistake. She interprets the evidence as showing the obtention of the deed without knowledge of its nature on her part, if she signed it, and the absence of a paid purchase price, thereby deducing fraud or mistake. We think there is hardly a doubt that she signed the deed. The burden of proof was cast on her to show that she had no knowledge of the nature of the instrument at the time she signed it, as well as to show by satisfactory evidence, even if she were permitted to impeach the consideration of the deed by establishing that none was in fact paid, the total want of a valuable consideration. Such evidence as favors her in that regard, if any, fails to satisfactorily sustain her contention. Moreover, the petition lacks an averment of either fraud or mistake.

V. Plaintiff also raises in her brief the issue of estoppel *in pais*. She contends that it need not be pleaded where it is inherent in the title or the facts develop it. She argues that surrender of possession and disclaimer of interest will constitute estoppel, provided they are made with knowledge of legal rights by the party surrendering and disclaiming, where the other party expends money for improvements, pays taxes for a length of time and holds possession in good faith under color of title. We do not un-

derstand from the evidence that Meatte surrendered possession to plaintiff. While there is evidence that Meatte disclaimed any interest in the property, it is rather incoherent and is refuted by the force of the evidence in defendant's behalf, that Meatte claimed it. The only improvement shown related to a fence erected on one side of the property in 1919, which was of slight value. Of itself, this was insufficient to show a surrender or disclaimer and therefore an estoppel. Nor was the payment of taxes sufficient of itself to constitute such.

VI. Plaintiff also asserts title to the northern fifty-two feet of said lots by adverse possession. There seems to be no doubt that the grantor of real estate may acquire title to premises conveyed by him by holding possession adverse to the grantee for the limitation period. Such possession by a grantor differs only from possession originated by another, in that it generally requires stronger proof to substantiate it. However, one asserting title by adverse possession is cast with the affirmative, and the burden to establish it by clear and positive proof rests on him who asserts it. Consequently, plaintiff was cast with the burden of establishing title in her by clearly showing an actual, open, notorious, exclusive and hostile possession for the full limitation period, under a claim of right.

We are concerned principally with the question of the sufficiency of the proof as to plaintiff's actual possession, which it was necessary for her to show to permit her to recover on the ground of adverse possession. Such possession, to be held adverse, must be shown by clear, distinct and unequivocal evidence. Residence, however, is not always an essential of actual possession, for, in connection with a claim of exclusive ownership, it may be shown by acts of dominion over the property.

Plaintiff seeks to establish title thus by several distinct acts of alleged actual possession. These are the payment of taxes, the renting to carnivals, the permission given to the churches, and the appointment of agents to supervise the lots, to which may be added her claim of color of title, although color of title is not an element of adverse possession. While there is seeming support for plaintiff's contention in regard to color of title (Gaines v. Saunders, 87 Mo. 557), there is much authority in other jurisdictions to the contrary. [2 C. J. 199.] However, we do not think color of title is involved, for plaintiff has not shown actual possession by satisfactory evidence. We have held that, while payment of taxes is evidence of a claim of ownership, it is not evidence of possession (Woodside v. Durham, 295 S. W. 773). Nor do we think that the appointment of agents to supervise her property and the occasional and casual rent-

486

ing of her lots to carnivals, together with the permission granted to the churches, show such continuity and duration of possession as to justify a finding of adverse possession. The evidence goes no further than showing that carnival tents and church stands were erected on the southern portion of the lots, to which plaintiff had undisputed title, and which seems to be more advantageously located. The use of the portion of the lots in controversy on these occasions was limited to people walking over it.

We are unable to find either an entry upon the premises by plaintiff with the intention of claiming title, or the ouster of Meatte. Furthermore, the only acts shown to have extended the full limitation period were the payment of taxes. The year plaintiff's property was first rented to a carnival, or permission was first granted to a church, is not shown. The erection of the fence on the east side of the lots by plaintiff's agent to keep people from using the lots as a hitching yard did not occur until 1919. In view of the facts and circumstances, we do not think plaintiff has established possession as cogently and with such certainty as the law requires.

The judgment is affirmed. *Higbee* and *Henwood, CC.*, concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.