Anton Rhodus, Victor Diestel, Bertha Mueller, Herman Rhodus, Annie Kary and Martha Smith, Appellants, v. M. P. Geatley, Trustee and Agent of the Bank of St. Clair, a defunct Corporation.—147 S. W. (2d) 631.

Division One, February 14, 1941.

398

*G. C. Beckham* and *Theo. P. Hukriede* for appellants.

400

*James Booth* and *James L. Anding* for respondent.

HAYS, J.—Appellants commenced this proceeding by filing in the circuit court a petition in two counts. Count one, upon which the case was tried, alleges that the plaintiffs (appellants in this court) are owners of a vested remainder in fee in certain lands situated in Franklin County and that the defendant is tenant thereof *per autre vie;* that the defendant claims the entire fee under certain recorded conveyances to be hereafter described. Said count then prays for judgment determining the title to be as aforesaid. The second count of the petition, which is also based upon the theory that the defendant is tenant *per autre vie* and that the plaintiffs are owners of the vested remainder, seeks damages for alleged waste.

Defendant's answer sets up a claim as fee simple owner in trust for the stockholders of a certain defunct bank. It also pleads certain conveyances under which this absolute ownership is asserted. It then proceeds to set up facts which defendant claims give rise to an equitable estoppel against the plaintiffs and pleads certain former judicial proceedings as the basis of *res judicata.* The case was tried under the first count only, to the court without a jury, and no evidence was offered by either party on the second count. Appellants have, in their brief filed with us, asked for judgment only on the first count and that count alone is before us for consideration. After such trial the court entered a general judgment for the defendant.

We shall presently state the facts giving rise to this controversy as the same are disclosed by the record, but we must first dispose of two preliminary questions.

First, respondent contends that appellants' abstract of the record is defective, because it fails to set out the contents of two exhibits offered and received in evidence in the trial below. While respondent has not filed a motion to dismiss nor a counter abstract, simply relying upon a statement of this supposed defect in his brief, we will pause to say that the abstract is, in our opinion, sufficient. It shows—and in the absence of a counter abstract we take the statements contained therein as being true—that the two exhibits mentioned were not included in the bill of exceptions when approved by counsel, signed by the trial judge and filed by the clerk. All matters not appearing upon the judgment roll itself or in the formal

written pleadings in the case are made part of the record on appeal only by their inclusion in the bill of exceptions, and the proper settling of this bill lies within the province of the trial court. It is the duty and right of an appellant to abstract only matters which appear of record below, and this includes the judgment roll, the formal pleadings, the verdict of the jury, if any, and those proceedings which are shown in the bill of exceptions as it was settled by the trial court, and nothing more. The present abstract is, therefore, not subject to attack on the ground mentioned in respondent's brief.

■ Second, respondent contends that the assignments of error set out in the appellants' motion for new trial are wholly inadequate and insufficient to form the basis of any assignments in this court. The motion contains six assignments of error which may be summarized as follows: That the judgment below was for the wrong party, was contrary to the evidence and to the law and against the equities of the case, and that under the pleadings and the evidence the court should have found for the plaintiffs and not for the defendant. The question of so-called general assignments of error in a motion for new trial has received considerable attention in our decisions. Many of the cases are cited and commented upon in Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297. It is true that under the statute, Sec. 1061, R. S. Mo. 1929, we are forbidden to consider on appeal any assignments of error "except such as shall have been expressly decided by such (lower) court," and that we have consistently held, particularly in actions at law, that a mere general statement in a motion for a new trial of the grounds on which it is sought is not sufficient; but the problem here presented is whether or not, in the circumstances of this particular case, the assignments of this motion could have been made any more specific than they were. The answer to that question will turn upon the nature of the proceedings, whether they be at law or in equity.

While our code of civil procedure, Sec. 696, R. S. Mo. 1929, has abolished all differences in pleading between actions at law and suits in equity, it did not affect the divergent substantive rules of the two complementary systems of jurisprudence, nor did it destroy many of the characteristic features of chancery practice. [State ex rel. v. Evans, 176 Mo. 310, 75 S. W. 914.] The case now before us (confining our attention to count one of the petition) is an action to try and determine title under Sec. 1520, R. S. Mo. 1929. The court of chancery anciently possessed jurisdiction to quiet the titles to lands whenever any recognized grounds of equity were pleaded in the bill. Equity courts continued to exercise this power under the code. [Hudson v. Wright, 204 Mo. 412, 103 S. W. 8.] Prior to 1897 courts of law exercised a similar power under the then existing statutes of this State but only within a narrowly restricted field. [Keane v. Kyne, 66 Mo. 216; McRee v. Gardner, 131 Mo. 599, 33

S. W. 166.] Section 1520, which was originally enacted in 1897 (Laws of 1897, p. 74, amended Laws of 1909, p. 343), supersedes the earlier legislation. The act specifically empowers courts having cognizance of proceedings thereunder to exercise either legal or equitable jurisdiction as the requirements of the particular case necessitate. A proceeding under the statute may be either an action at law or a suit in equity, depending on the character of the issues as framed by the pleadings. [Barron v. Store Co., 292 Mo. 195, 237 S. W. 786.] In the present case one of the issues, if not the principal issue, raised by the answer relates to an alleged equitable estoppel. The relief sought by both the plaintiffs and the defendant is of a nature appropriate to the jurisdiction of a court of chancery. All of the parties to the litigation, as well as the circuit judge, treated the suit as one in equity. We believe that it must be so considered on appeal. Of course, the second count in the petition was clearly one at law. But, as stated above, the entire case was disposed of upon a trial under the first count and the errors now assigned relate solely thereto.

█ In determining, therefore, whether the assignments of error contained in this motion for new trial are sufficiently specific, we must have regard to the distinctive nature of chancery practice as distinguished from common law practice. In actions at law the function of the judge is clearly differentiated from that of the jury. Questions of law are for the judge, questions of fact for the jury. We concern ourselves only with alleged errors committed by the judge. It is true that certain questions of fact do reach us. This occurs when the court below has sustained or overruled a request of either of the parties for a directed verdict. In such case the question on appeal is whether or not the trial judge acted erroneously under the law in so directing or refusing to direct a given verdict. Error may be and should be assigned specifically in the motion for new trial upon the action of the trial judge in granting or refusing the peremptory instruction.

In an equity case, however, the chancellor tries and determines both questions of law and fact. In deciding for the plaintiff or the defendant he necessarily makes a dual determination. First, he finds that certain facts are established by the evidence, and, second, he applies to the facts so found what he considers to be the properly applicable rules of law, and from these premises of fact and law he reaches an ultimate decision for the plaintiff or for the defendant. But, unless the chancellor sees fit to make and file specific findings of fact and conclusions of law, the two branches of his determination are indistinguishable. In his general finding for the plaintiff or the defendant the two are inextricably intermingled. He states his conclusion but not the premises from which it is drawn. In reviewing such a decision in an equity case this court has to try the issues *de novo*. By that is meant, however, that we take the entire

record as made in the lower court and from it arrive at our own conclusions as to the proper ultimate decision. Of course, we pay due deference to the finding of the chancellor who had an opportunity, denied to us, to judge of the truthfulness of witnesses by observing their general appearance and demeanor on the stand. [Brightwell v. McAfee, 249 Mo. 562, 155 S. W. 820; Price v. Morrison, 291 Mo. 249, 236 S. W. 297.]

If the trial chancellor has made and filed specific findings of fact and conclusions of law as the basis for his decision, the unsuccessful party can and should assign error specifically as to certain of these findings; but where, as here, the chancellor has made only a general finding for one party and against the other and where the losing party desires us to review this general decision, claiming that the chancellor has reached the wrong conclusion from the evidence and the law, he cannot possibly make his assignments of error more specific than those contained in the present motion. We, therefore, hold that the assignments in the present case were proper and sufficient. We have examined the large number of cases cited by the respondent in this case but find that they are differentiated by the facts from the case at bar.

■ We turn now to the facts of the present case as disclosed by the record. Prior to January 1, 1918, the lands in controversy were owned in fee simple by Wilhelmine Rhodus. On January 1, 1918, she died intestate leaving John H. Rhodus, her widower, and the various appellants as her children and only heirs. In the early part of March, 1920, John H. Rhodus, the widower, commenced a partition suit in the Circuit Court of Franklin County, naming all of his children and stepchildren as parties defendant therein. All of said defendants except Victor Diestel were minors but were duly served with process. The petition in the partition suit alleged the fee simple ownership of Wilhelmine Rhodus and her death; that John H. Rhodus was her widower and that the defendants were her children and heirs at law. Victor Diestel made default. A guardian *ad litem* was appointed for the minors and answered for them. After hearing, an interlocutory decree was entered in favor of the plaintiff with an order of sale. At the partition sale, held in pursuance of said order, John H. Rhodus was the highest bidder and the property was stricken off to him. The sheriff duly reported this sale and it was approved by the court and a sheriff's deed executed to Rhodus. The expense of the suit consumed a large part of the purchase price. The court determined the interest of John H. Rhodus as life tenant under the mortality tables, and ordered that the remainder of the purchase price be distributed to the heirs, the amount allotted to each being $4.61. Victor Diestel's share was tendered to him by the sheriff, in the form of a bank check, drawn to his order, which was sent to him by mail. He received it and retained it, but

did not present it for payment. The shares of the various Rhodus children were turned over to John H. Rhodus as their natural guardian. It does not appear that he ever accounted to them therefor. The record is silent as to exactly what happened to the share of Bertha Diestel (now appellant Bertha Mueller) who, like her brother Victor Diestel, was a child of Wilhelmine Rhodus by a former husband. It does appear that the check for her $4.61 was sent to her and was later presented by someone to the bank and cashed. She was at the time a minor.

In 1929 John H. Rhodus executed a promissory note for $1800 payable to the Bank of St. Clair and due one year after date. This note became due and was not paid. The bank sued Rhodus and obtained judgment. After this note became due Rhodus conveyed the lands here in question to his daughter Annie, one of the present appellants, by quitclaim deed. When judgment on the note had become final the bank caused execution to be issued thereon and caused the sheriff to levy the same on these lands. An execution sale was had in due course at which the bank was the highest bidder for $10, and a sheriff's deed for the lands was duly executed and delivered to the bank.

Thereafter the bank filed its bill in equity against John H. Rhodus, Annie Rhodus (now appellant Annie Kary), Herman Rhodus and Anton Rhodus, pleading the quitclaim deed to Annie Rhodus, above-mentioned, and also a deed from John H. Rhodus to his sons Herman and Anton (two of the present appellants), whereby he conveyed to them certain other lands not here involved. The bill proceeded to allege that these conveyances were made without consideration and with the purpose of hindering, delaying and defrauding the creditors of John H. Rhodus, of whom the bank was one. The defendants entered their appearances generally and, on their application, the venue was changed to St. Louis County where the case proceeded to trial. The circuit court of that county found in favor of the defendants Herman and Anton Rhodus but against the defendant Annie Rhodus, and ordered that the deed to her from John H. Rhodus be set aside.

Shortly thereafter the assets of the Bank of St. Clair were liquidated, and, at the close of liquidation, the present defendant was appointed as a trustee to hold certain remaining assets, including the interest of the bank in these lands, for the benefit of its stockholders.

It is conceded by all parties that after the death of Wilhelmine Rhodus her husband John was possessed only of a life estate in the lands here in suit. It is to be noted in this connection that John and Wilhelmine Rhodus were married many years prior to the enactment in 1921 of what is now Sec. 319, R. S. Mo. 1929 (Laws of 1921, p. 119); that Wilhelmine obtained title to these lands prior to that enactment and that she died before it went into effect. The rights

of her surviving husband therefore were limited to common law curtesy, a life estate only. It is also conceded that a life tenant who owns no interest whatever in the remainder cannot maintain a partition suit against the remaindermen. [Gray v. Clement, 286 Mo. 100, 227 S. W. 111 (again before this court and decided in 296 Mo. 497, 246 S. W. 940).] Some doubt might have been entertained as to whether a judgment rendered in such a suit in favor of the life tenant and against the remaindermen was absolutely void and therefore subject to collateral attack, or was merely erroneous and subject to attack only on appeal or writ of error; but such doubt is dispelled by our decisions in the Gray case, supra, in which, upon a state of facts closely analogous to those in hand, we expressly held the judgment void. Two questions are therefore now for determination: (1) Are the present appellants (defendants in the partition suit above mentioned) estopped from asserting the invalidity of the partition sale by accepting what was there determined to be their share in the proceeds? (2) Was the matter litigated in the equity suit in St. Louis County so that the appellants herein or any of them are barred by that judgment from asserting their present claim?

In the ordinary instance of equitable estoppel one party is barred from setting up a claim because he has by word or deed, or by silence when honesty and fair dealing required him to speak, made a representation, actual or constructive, to the adverse party, which the adverse party has believed and, so believing, has changed his legal position for the worse. It is not claimed and certainly cannot be contended that such an estoppel exists in the present case. There is no evidence that any representation, actual or constructive, on behalf of the present plaintiffs was brought to the knowledge of the defendant or his predecessor in title or was believed or relied upon by them or either of them causing action on their part to alter their legal position. But our attention is directed by counsel to another species of estoppel frequently mentioned in the authorities. [19 Am. Jur., sec. 64, p. 684, citing the following cases: Lawson v. Cunningham, 275 Mo. 128, 204 S. W. 1100; Mengel v. Leach (Mo.), 226 S. W. 883; Milan Bank v. Richmond, 280 Mo. 30, 217 S. W. 74, 9 A. L. R. 353; Lindsley v. Patterson (Mo.), 177 S. W. 826, L. R. A. 1915F, 680; Chicago G. W. Ry. Co. v. Kemper, 256 Mo. 279, 166 S. W. 291, Ann. Cas. 1915D, 815; Stone v. Cook, 179 Mo. 534, 78 S. W. 801, 64 L. R. A. 287; McBreen v. McBreen, 154 Mo. 323, 55 S. W. 463, 77 Am. St. Rep. 758.]

In these cases and in many others it is held that "Estoppel is frequently based upon the acceptance and retention by one having knowledge or notice of the facts of benefits from a transaction, contract, instrument, regulation, or statute which he might have rejected or contested." [19 Am. Jur. 682.] The rule is, perhaps, more properly classified as one of ratification or election than as one of estoppel.

But be that as it may, the result is the same, and its existence as a recognized principle of equity is unquestioned. As a version or corollary of the above rule, it is held that where one received the purchase price or a part of the purchase price paid at a judicial sale of property in which he is interested, he may not thereafter question the validity of such sale, even though it be in fact absolutely void. [Lawson v. Cunningham, supra.]

But the general principle stated above is not without its recognized exceptions. As the doctrine itself is one of equity, it must be applied to do equity and must not be applied in such a manner as to violate the principles of right and good conscience. [Ashwander v. Tennessee Valley, 297 U. S. 288, 56 Sup. Ct. 466, 80 L. Ed. 688.] The facts as they bear upon the alleged estoppel against the different appellants vary so that the situation as to each of them must be separately considered.

First, as to the appellants Anton Rhodus, Herman Rhodus, Annie Kary and Martha Smith. These parties were all children of John H. Rhodus; they were all infants at the time of the partition sale and at the time of the distribution of the proceeds thereof. No one of them reached his majority until some years thereafter. The distributive share of each (less than five dollars apiece) was paid over to John H. Rhodus, who occupied a peculiar three-fold position: as plaintiff in the partition suit and therefore an adverse party to his children; as purchaser at the partition sale and therefore the payer of the purchase price; and as father and natural guardian of these defendants and therefore recipient from himself of their portion of the purchase money. It is true that in the cases of Virgin v. Kennedy, 326 Mo. 400, 32 S. W. (2d) 91, and Bogart v. Bogart, 138 Mo. 419, 40 S. W. 91, and other similar cases, we have said that an estoppel of the kind here involved can be asserted against infants who have received a portion of the purchase money of a void sale and retained the same *after attaining their majority*. In the Bogart case the share of the purchase money due to certain minors was paid over to their statutory guardian and when they attained full age she accounted for it to them. In the Kennedy case the minors received a portion of the lands involved (evidently after a partition in kind) and retained title after reaching the age of twenty-one. On the other hand in Scott v. Royston, 223 Mo. 568, 123 S. W. 454, this court held that a mere payment to the mother of minors, who was not shown to have accounted to her children for such payment after they attained majority, cannot be relied upon as the basis for an estoppel against them. This would be particularly true where, as here, the share of each infant was an insignificant amount, and where the money was paid over by the father, as purchaser, to himself as the sole natural guardian of the infants. It is also to be pointed out that the father was not a statutory guardian and himself was neither under bond

nor required to account for property of his infant children to the probate court. We are, therefore, constrained to hold that no case of estoppel is made against any of this group of appellants.

As to appellant Victor Diestel: The evidence shows that after the partition sale the sheriff was ordered to pay this appellant's share directly to him. The sheriff drew a check in his favor for the amount of $4.61 and mailed it to him, together with a blank receipt for his signature. He did not return the paper nor did he cash or otherwise dispose of the check. It was never presented to the bank for payment and was in Victor Diestel's possession at the time of the trial in this case. The amount of the check, therefore, was never debited to the sheriff's account by the drawee bank. Ordinarily the mere delivery of a bank check does not constitute a payment. [Johnson-Brinkman Comm. Co. v. Central Bank, 116 Mo. 558, 22 S. W. 813, 38 Am. St. Rep. 615; Armstrong v. First National Bank (Mo. App.), 195 S. W. 562; 21 R. C. L. 60; 48 C. J. 617.] Of course, if a check is cashed by the respondent, payment is effected thereby. [48 C. J. 618.] The parties may expressly agree that the delivery of the check itself shall be payment. [21 R. C. L. 64.] But here there is no evidence that Victor Diestel did so agree, and, as stated, he never actually cashed the check nor negotiated it. Did he, in effect, accept it as payment by merely failing to return it to the sheriff? Had the sheriff been prejudiced by such retention, the contention might have been made. [Smith v. Miller, 43 N. Y. 171, 3 Am. Rep. 690; Ann. 10 L. R. A. (N. S.) 541.] But nothing of this sort is either pleaded or proved. We hold, therefore, that there is no basis for an estoppel against Victor Diestel.

As to Bertha Mueller, nee Diestel: At the time of the partition sale she was 16 years old. The court's order of distribution directs that her share be paid "to her natural guardian," but the record is silent as to who her natural guardian was, if indeed she had one. John H. Rhodus was not her father, as she was the child of a former husband of Wilhelmine. Her father was dead and, while there is no direct evidence as to the matter, it may be fairly inferred that her father was also dead. The sheriff filed no final report of distribution, or at least it is not put in evidence here; but he testified that he did send Bertha Diestel a check for $4.61, which was later presented to and paid by the drawee. Whether this check was sent to and cashed by the 16-year-old girl herself or was cashed by someone else for her does not appear. There is no evidence that she personally received the money involved. The burden of proof is upon the party pleading an estoppel. We think that in connection with Bertha Mueller, this burden has not been met by the present defendant.

But respondent contends that the appellants have waited nearly 20 years to question the validity of this partition sale and should not now be permitted to say that it was void. The answer,

as we read it, does not contain a formal plea of laches, but this contention is presented to us in aid of the plea of estoppel. Whether the question of laches is properly in the case or not, there is no evidence upon which such a defense could be sustained. None of the present plaintiffs have any interest in this land *in praesenti*. Their interest is solely *in futuro*. Their remainder is a vested one in the strict legal sense, because it is certain to vest in possession on the determination of the particular life estate and it is not subject to any contingency, but it is not vested in the sense that any of the remaindermen are now entitled to possession. They will be entitled to possession only when John H. Rhodus, the *cestui que vie*, dies. It has been determined in actions at law that a Statute of Limitations cannot run against a vested remainderman until the end of the particular estate. [Hauser v. Murray, 256 Mo. 58, 165 S. W. 376; Crismond v. Kendrick, 325 Mo. 619, 29 S. W. (2d) 1100.] Laches is a doctrine of equity and does not strictly depend upon the Statute of Limitations. But in this connection equity follows the law and ordinarily will not hold a party barred by his laches where the Statute of Limitations has not run.

We come now to the second contention of respondent. Were the issues in the present case determined by the trial in the St. Louis Circuit Court in such a manner as to bar the present appellants or any of them from asserting their claims in this case? It will be recalled that after the partition sale, above described, John H. Rhodus gave a quitclaim deed to his daughter Annie (now appellant Annie Kary), and that in the equity suit in St. Louis County this deed was set aside as fraudulent. In said action two of the other appellants, Herman Rhodus and Anton Rhodus, were made defendants, but it was not alleged in the bill nor in their answer that they had any interest whatever in the particular real estate here involved, nor was any relief asked against them in connection with this land. They were sued solely to obtain a cancellation of a deed from their father to them of certain other lands with which we are not concerned.

As to all of the present plaintiffs except Annie Kary, Herman Rhodus and Anton Rhodus, it is plain that the St. Louis County proceedings can have no effect. They were not parties to that action and, of course, any judgment therein rendered cannot be *res judicata* as to them.

As to Herman Rhodus and Anton Rhodus, the question of the present real estate was not litigated, nor could they have raised any question in regard thereto in that case. Clearly there is no basis of *res judicata* as to them. There remains therefore only the case of Annie Kary. It is true that as to her the questions here involved were not in issue. In this State we have accepted the doctrine, however, that where certain matters could be put in issue by an answer and are not, the decision of a case against the party who might have

pleaded them but did not may be taken as an adjudication of such matters in future litigation. [United States v. Lufcy, 329 Mo. 1224, 49 S. W. (2d) 8; Healy v. Moore (Mo. App.), 100 S. W. (2d) 601. Cf. Gunter v. Atlantic Coast Line Railroad Co., 200 U. S. 273, 26 Sup. Ct. 252, 50 L. Ed. 477; United States v. Haytian Republic, 154 U. S. 118, 14 Sup. Ct. 992, 38 L. Ed. 930.] On the other hand, it is equally well established that a judgment in a prior action in which a claim might have been asserted by way of counterclaim or cross bill but was not so asserted does not adjudicate the matter. [Grady v. Mc-Corkle, 57 Mo. 172, 17 Am. Rep. 676; Virginia-Carolina Chemical Co. v. Kirven, 215 U. S. 252, 30 Sup. Ct. 78, 54 L. Ed. 179; Schwinger v. Raymond, 83 N. Y. 192, 38 Am. Rep. 415; Friend Lumber Co. v. Armstrong Bldg. Finish Co. (Mass.), 177 N. E. 794, 80 A. L. R. 599.]

In the St. Louis County case the plaintiff therein sought to have the quitclaim deed to Annie Rhodus (now appellant Annie Kary) set aside. That quitclaim deed had purported to convey all of the interest of John H. Rhodus. If it were not fraudulent it did convey his life estate. Regardless as to what interest Annie Kary had in the remainder, plaintiff was entitled to the relief sought if it could show the fraudulent character of the quitclaim deed. Annie Kary could not have defeated plaintiff's claim by setting up the invalidity of the partition sale. She could have set it up only by way of cross bill to have her interest in the remainder determined. But she is not barred from now asserting that interest by her mere failure to file such cross bill. We, therefore, hold that the St. Louis County case did not adjudicate the issues presented in this trial.

For the reasons which we have above stated and upon the uncontradicted evidence disclosed by the record, the decree of the trial court should have been for the plaintiffs and not, as it was, for the defendant. The cause must therefore be reversed and remanded with directions to enter a decree determining title in accordance with this opinion. It is so ordered. All concur.