John D. WORKMAN, Respondent,

v.

Earl M. ANDERSON, Sheriff of Nodaway County, Missouri, Defendant, Emmett Bartram and Marie Bartram, Appellants.

No. 45355.

Supreme Court of Missouri.

Division No. 2.

Jan. 14, 1957.

Ellis Beavers, Grant City, John J. Robison, Maysville, for appellants.

Gene Thompson, James P. Dalton, Maryville, Randolph & Randolph, St. Joseph, for respondent.

STOCKARD, Commissioner.

Appellants have appealed from a judgment of the Circuit Court of Nodaway County setting aside an execution sale and sheriff's deed executed pursuant thereto. A rather complete statement of the facts will be made.

John D. Workman, who is respondent here, and his wife, Gwen Workman, while residents of Texas, executed a promissory note to the First National Bank of Fort Worth, Fort Worth, Texas, in part payment for an automobile. Subsequently, respondent and his wife were divorced and it was agreed between them that the wife should keep the automobile and assume the remaining obligation thereon. The wife found the burden of the automobile too great, and she turned the automobile over to the bank for what she thought was a satisfaction of the remaining obligation. The bank credited the note with only $40 by reason of the return of the automobile, which left a balance due

of $302.90, and then brought suit on the note against respondent by attachment in the Circuit Court of Nodaway County, Missouri, for $302.90 and $30 attorney fees. In the affidavit for attachment filed pursuant to Sections 521.050 and 521.060 (all statutory references are to RSMo 1949, V.A.M.S.), it was averred that respondent was a nonresident of this state and that the amount the bank believed it ought to recover was $332.90.

The sheriff levied on the "right, title and interest" of respondent in a 120-acre farm. At that time, and at the time of the subsequent sale thereof by the sheriff, respondent had only a contingent interest in the farm. By will, Lulu Staples, an aunt of respondent, had devised the farm to her husband, Bert B. Staples, "to have and hold for and during his natural life and at his death the same shall go to and become the property of my nephew John D. Workman, in fee simple, but should the said John D. Workman predecease my said husband, Bert B. Staples, then and in that event, all of the above described real estate shall go to and become the absolute property of my husband in fee simple."

Substituted service by publication was had on respondent, judgment by default was entered in the amount of *$352.90*, and special execution for that amount was issued against the interest of respondent in the farm. On October 23, 1954, the sheriff sold the interest of respondent in the farm for $1,200 to Joe Workman and Nannie Workman, and to Emmett L. Bartram and Marie Bartram, each couple paying $600. From the purchase money received, the sheriff subsequently remitted to the bank the sum of *$355.08*. Sixty-two days after the execution sale Bert B. Staples died. The value of the farm was estimated at varying amounts up to $40,000.

Respondent filed this suit on January 17, 1955 to set aside the execution sale and the sheriff's deed. Appellants' answer included the affirmative defense that re-

spondent had ratified the sale, and it is therefore necessary to detail the events that took place subsequent thereto.

Prior to the execution sale on October 23, 1954, appellant Bartram had been appointed inheritance tax appraiser for the Lulu Staples estate. The day after the sheriff paid the bank the amount of its judgment in the suit on the note by attachment, Bartram, in his capacity as inheritance tax appraiser, wrote an air mail and special delivery letter to respondent in California advising him that it was highly important for him to be present in Maryville, Missouri for an immediate adjourned hearing on the inheritance tax. Two days later, Bartram called respondent by telephone and urged him to return to Maryville, and in both the letter and the telephone call he told respondent he could lose a 400-acre farm, which had been left to him by Lulu Staples under the same terms as the 120-acre farm, if he did not make immediate arrangements to take care of the inheritance tax. Respondent returned to Missouri by airplane on November 14, 1954, and Bartram personally paid his expenses, later submitting a claim against the Lulu Staples estate therefor as expenses in his capacity as inheritance tax appraiser. Although Bartram and respondent discussed the tax question, it cannot be said that any adjourned hearing was ever held. Bartram told respondent that his inheritance tax would be $1,700 to $1,900, and that if respondent would get the money the sheriff was holding from the sale of his interest in the 120-acre farm, then he (Bartram) and Joe Workman would put up the remainder and pay the inheritance tax, and by that means respondent could save the 400-acre farm. There was in fact no reason that the inheritance tax had to be paid with the urgency indicated. Respondent refused to follow Bartram's suggestion, and before returning to California the next day he sought legal advice concerning the need for the immediate payment of the inherit-

ance tax, and concerning his rights as a result of the sale by special execution of his interest in the 120-acre farm.

Respondent returned to Maryville on December 28, 1954 and employed counsel to bring this suit. In the meantime Bert B. Staples had died, and respondent attempted to negotiate a loan with the 400-acre farm as security. The bank making the loan asked that the abstract show that there were no judgments against respondent. It was then discovered by the abstracter that the judgment obtained by the Texas bank in the suit on the note by attachment had not been released although the sheriff had paid the amount of the judgment plus interest to the bank. Respondent contacted a local attorney, and the inquiries and possibly the efforts of this attorney resulted in the release of the judgment after the sheriff paid the publication costs and other items of court costs from the surplus he held. Respondent refused to accept from the sheriff a check in the amount of $757.77, which represented the balance in the sheriff's hands after the judgment was released of record.

When this suit was filed on January 17, 1955, Joe Workman and his wife were made parties defendant, but they did not want to claim adversely to respondent, who was their nephew, and before trial they executed a quit-claim deed to respondent. Joe Workman's attorney insisted on immediate repayment of the $600 paid by Joe Workman to the sheriff, and with the consent of respondent the trial court directed the sheriff to pay to Joe Workman $600 from the funds he held as surplus from the sale of respondent's interest in the 120-acre farm. This suit was then dismissed as to Joe and Nannie Workman.

The decree of the trial court set aside the execution sale and the sheriff's deed. No findings of fact and conclusions of law were requested or given. It should be noted that although the parties have devoted a considerable portion of their briefs to the question of whether the judgment of the trial court in the suit against respondent by attachment was void or voidable, the trial court made no mention of that judgment in its decree in this case, and it is in no way affected by the judgment from which this appeal is taken.

■ One of the challenges made against the execution sale was that the special execution was for an amount greater than that sworn to in the affidavit for attachment. Appellants state in the argument of their brief that the only issues are as follows: "(1) Was the judgment void under which the appellants purchased the property? (2) And did any of the irregularities relied upon by the respondent void said sale at which the appellants purchased the land?" Of course, a void judgment will not support a writ of execution, but one seeking to cancel a sheriff's deed under an execution sale need not necessarily attack the validity of the judgment. The sheriff's deed may be canceled because of the invalidity of the execution sale. Shelton v. Franklin, 224 Mo. 342, 123 S.W. 1084, 135 Am.St.Rep. 537. The validity of the judgment upon which the special execution was based is not an issue in this appeal. Also, appellants do not go far enough when they limit their argument that the irregularities relied on by respondent did not make the sale void. This suit in equity constitutes a direct attack, as distinguished from a collateral attack, on the validity of the execution sale. Yeaman v. Lepp, 167 Mo. 61, 66 S.W. 957; Rogers v. Wilson, 220 Mo. 213, 119 S.W. 369; Shelton v. Franklin, supra; Queen City Inv. Co. v. Kreider, Mo.Sup., 31 S.W.2d 1002. Irregularities that will not result in an execution sale being void may yet constitute good cause for setting it aside upon timely direct attack. The language of the only point in appellants' brief which could be construed to assign as error the action of the trial court in setting aside the execution sale and sheriff's deed for the discrepancy between the amount sworn to in the affidavit and the amount for which the special execution was issued is, "The fact if true that

the judgment was for $20 more than the amount sworn to in affidavit [for attachment] * * * does not render the sale judgment void." If the action of the trial court was correct because of the discrepancy above noted, regardless of the merits of the other contentions of respondent, the judgment should be affirmed and we need not determine the sufficiency of appellants' point to raise the question on appeal.

■ Section 521.060 requires that in the affidavit for attachment there be set forth "the amount which the affiant believes the plaintiff ought to recover." This amount was stated to be $332.90. Section 521.380 provides that when notice to the defendant is by publication and he shall not appear and answer, which is what happened, judgment by default may be entered, but in no case shall judgment be rendered against defendant for an amount greater than that sworn to by the plaintiff at the time of obtaining the attachment with interest, damages and costs. We need not determine in this case the effect on the judgment in the attachment suit of the violation of Section 521.380 because the trial court did not purport to disturb that judgment. Section 521.560 then provides for the issuance of executions in suits begun by attachment, but it is specifically provided that when there is a special judgment against the property attached, as was true in this case, the execution shall be a special *fieri facias* against such property, *and shall not be for more than the amount sworn to in the affidavit for attachment* with interest and costs thereon. The limitation on the amount of the execution refers back to the affidavit and not to the judgment. The special execution in this case violated Section 521.560.

■ We do not find any case, and none has been cited to us by the parties, in which the precise question here presented has been ruled. However, in determining this issue we must keep in mind that this is a direct attack on the validity of an execution sale in a suit begun by attachment, that

attachment proceedings are purely statutory and in derogation of the common law, and the statutory proceedings must be strictly followed. Bryant v. Duffy, 128 Mo. 18, 30 S.W. 317; Vittert v. Melton, Mo. App., 78 S.W.2d 467.

■ By reason of the clear and unequivocal language of Section 521.560, the amount sworn to in the affidavit for attachment constitutes the maximum amount for which the court is authorized to issue a special execution against the property levied on by the sheriff. We need not determine that the irregularity in this case resulted in the sale being void, but we need determine only if in this direct attack on the sale the irregularity constitutes good grounds for setting aside the sale and canceling the sheriff's deed, and we think it does. For cases where execution sales have been set aside in proceedings such as this for irregularities that did not result in the sale being void, see Wieser v. Linhardt, Mo. Sup., 257 S.W.2d 689 (gross inadequacy of sale price) and Queen City Inv. Co. v. Kreider, supra (property subject to division and sheriff sold all the property in violation of a statute directory in nature). In Shelton v. Franklin, supra, it was ruled that a sheriff's deed was subject to being set aside in a separate suit in equity for an irregularity that did not result in the sale being void, but that the evidence did not warrant such action, and in Yeaman v. Lepp, supra, and Kelly v. Hurt, 61 Mo. 463, petitions were held to state a cause of action in which it was sought to set aside sheriff's deeds for irregularities which did not make the deeds void. In a case of the kind we have here where the court obtained jurisdiction by attachment for only a special judgment against the property and substituted service by publication only was had on the owner thereof, and when the sale by special execution was based on a default judgment, the defendant, (respondent in this case) is entitled to have strict compliance with the statutory procedure authorizing the sale of his property. Both the language and purpose of Section 521.-

560 were violated in this case, and upon this timely and direct attack on the validity of the sale, a court of equity, under the circumstances of this case, may and should set aside the execution sale and sheriff's deed so that respondent's property will not be sold to his detriment pursuant to a special execution issued by a court in excess of its authority.

Appellants contend that they were innocent purchasers, but the irregularity appeared on the face of the record of which they were charged with knowledge. Appellants also cite and rely on Section 511.240 which provides that no sale or conveyance of property for the satisfaction of any judgment, regularly made, shall be affected or prejudiced by the setting aside of the judgment on the appearance of a defendant if the property shall be in the hands of innocent purchasers. The language of this statute obviously is not applicable to the factual situation of this case. Appellants also rely on Section 511.260(10) which provides, among other things, that no judgment shall be reversed, impaired or in any way affected for any mistake in any sum of money when the correct sum shall have been once rightly alleged in any of the pleadings or proceedings. This statute is limited in its operation to the effect that certain irregularities shall have on judgments, and the decree of the trial court from which this appeal is taken did not purport to affect the judgment upon which the special execution was based. The specific provisions of Section 521.560 govern the situation we have here.

Appellants next contend that even though the execution sale was erroneous, respondent ratified and confirmed the sale by requesting that part of the purchase money paid to the sheriff be paid out for his benefit. It is the general rule that where one, with full knowledge of the facts, receives all or part of the purchase price paid at a judicial sale of property in which he is interested, he may not thereafter question the validity of the sale. But this rule is one of equity, and it must not be applied in such a manner as to violate the principles of right and good conscience. Rhodus v. Geatley, 347 Mo. 397, 147 S.W. 2d 631, 638. Certainly respondent did not ratify the sale by obtaining a quit-claim deed from Joe and Nannie Workman after this suit was filed and by agreeing that the $600 paid by them to the sheriff be returned. That constituted a settlement of this suit in so far as it affected Joe and Nannie Workman, and everything respondent did in connection with that transaction is consistent with the contention that the execution sale was invalid. Neither are we impressed with appellants' contention that under the circumstances of this case respondent ratified the sale by arranging, if he did so, to have the judgment obtained by the Texas bank released after the sheriff had paid the bank the amount of its judgment. Apparently all concerned with this transaction were mistaken as to the effect of the judgment in the suit by attachment on the 400-acre farm. The rule relied on by appellants is "based upon the acceptance and retention by one having knowledge or notice of the facts of benefits from a transaction, * * * which he might have rejected or contested." 19 Am.Jur., Estoppel, § 64; Rhodus v. Geatley, supra. Respondent has neither requested nor accepted benefits from the transaction which he later sought to set aside. From the time respondent first learned of the execution sale he refused to ask for or accept the surplus proceeds thereof held by the sheriff, and he even refused to follow, what has the appearance of a craftily made suggestion that he obtain the money held by the sheriff, and thereby ratify the sale, and use it as part payment of the inheritance tax. The rule relied upon by appellants was never intended to apply to the factual situation we have here.

The trial court correctly set aside the execution sale and the sheriff's deed under the circumstances of this case, and therefore, the judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

EAGER, P. J., STORCKMAN, J., and STONE, Special Judge, concur.

LEEDY, J., not sitting.