Marie D. BACH, Appellant,

v.

STANDARD OIL COMPANY, a Corporation,
Respondent.

No. 48234.

Supreme Court of Missouri,

Division No. 2.

April 10, 1961.

J. M. Shirley, Kansas City, for appellant.

Alvin C. Randall, Hogsett, Houts, James, Randall & Hogsett, Kansas City, Jesse L. Childers, Kansas City, for respondent.

BARRETT, Commissioner.

Mrs. Marie D. Bach, age 82, and the Standard Oil Company are adjoining property owners. Mrs. Bach acquired her property in October 1944, her deed describes a lot 40 by 90 feet fronting on 31st Street. The Standard Oil Company has owned its lot on the corner of 31st Street and Benton Avenue since 1927 and its muniments of title describe a lot 90 feet by 90 feet. Claiming title by adverse possession to a strip of ground 6 to 7 feet wide off of the west side of Standard's property, Mrs. Bach, in October 1959, instituted this action to accordingly quiet the title. In her petition she describes the claimed area in this manner: "That her property was separated from that of Defendant by a 'line fence' * * * located paral(1)el to and Thirteen feet Six inches East of the foundation wall of her building and running 90 feet North and South, the full length of her lot." The trial court found against her claim and entered a judgment "that plaintiff has failed to establish a right by adverse possession to any of defendant's land," and Mrs. Bach has appealed from that judgment.

The parties are not in disagreement as to the applicable substantive law concerning either titles by limitation (V.A.M.S. § 516.010) or the elements of adverse possession. State ex rel. Edie v. Shain, 348 Mo. 119, 122–123, 152 S.W.2d 174, 176. Mrs. Bach points to each of the five elements and insists that the court erred "in finding from the evidence" that she had not sustained her burden of proof as to actual, open and notorious, continuous, exclusive and hostile possession. Briefly, Mrs. Bach and her son testified that she did not examine her title or the property, she and her husband purchased it and she just moved in. There was a picket fence between her house and the Standard Oil filling station and she "supposed that was the line". After moving into her home she used the ground up to the fence, she

"used it as garden, and I planted trees and flowers and took care of it, and I took care of it like my own." As to trees she said, "Well, ten years ago anyway I planted some, I planted a peach tree, and of course the cherry tree died out and I replanted again, and plum tree, and so on, * * *." She never asked permission of anyone to use the ground up to the fence, "nobody ever asked me did I own it," she thought the fence was her line and since 1944 she claimed ownership up to that line. She said that she had "gardened" up to the fence "Every year. Except this last year" when she "was ailing." Her son put a wire across the back of the lot and she raised grapes up to the northeast corner. Two or three years ago she took out part of the curbing and made a "ramp" or driveway into her yard and the ramp extends over the property line. Mrs. Bach points to all this testimony and argues that she "made out a prima facie case of adverse possession" and contends, therefore, that the court erred in finding that she had not sustained her burden of proof as to each of the five essential elements.

Mrs. Bach points to the defendant's lack of evidence as to its use or possession of the claimed strip and to its lack of any evidence contradictory of her testimony and contends that after establishing a prima facie case the burden was upon the defendant company to adduce or come forward with evidence as to her occupancy, her intention and the elements of adverse possession. In this connection it may be noted that, other than inferentially, the defendant did not offer any evidence as to any of these matters, it did not even prove the payment of taxes over the years on its 90 x 90 foot lot. Its only witness had been with the company but a short time and had only such knowledge of the property or its use as its records revealed and most of those had been destroyed. And, one of the court's findings of fact, supplied by the defendant, was that during the ten years prior to the institution of the suit "plaintiff made limited use of the said 7 foot strip of land." The court found, however, that her use and possession "was not continuous, actual and notorious."

The defendant company says that Mrs. Bach's interpretation of the record is based "only (on) inferences favorable to her" and ignores "all inferences unfavorable to her." The defendant says, "Since there is no pretense of color of title, no evidence of any express claim to the land in question, no evidence that it was ever enclosed, and since plaintiff is asking for the entire strip of land, her burden with respect to possession and claim of right is even greater than it would otherwise be." In summary it is argued that "The trial court's function was not confined merely to determining whether plaintiff made a 'submissible case.' He was not required to resolve all doubts in favor of plaintiff. Indeed, with respect to the weight of the evidence, he was required to do quite the contrary."

These contentions of the parties have been set forth at some length because they reveal a lack of complete understanding of the essential nature of the action. There is also some misapprehension by the parties as to the trial court's function in trying the cause initially and as to this court's function in disposing of the appeal. The jury-tried cases, cited by both parties, concerned with whether there was substantial evidence in support of a finding of adverse possession, or with whether one of the parties was entitled to a directed verdict are quite beside the point. Such were Jamison v. Wells, Mo., 7 S.W.2d 347, and Milligan v. Fritts, 226 Mo. 189, 125 S.W. 1101. Likewise jury and even court-tried cases concerned with whether there was a prima facie case, the burden of proof and the burden of going forward with evidence, or the propriety of instructions as to the burden of proof and adverse possession have no place in the disposition of this cause. See for illustration Bell v. Barrett, Mo., 76 S.W.2d 394; White v. St. Louis Post Offices Corp., 348 Mo. 961, 156 S.W.2d 695, and Hamburg Realty Co.

v. Walker, Mo., 327 S.W.2d 155. While the plaintiff relies on adverse possession and hence a title by limitation (V.A.M.S. § 516.010), the action is in fact, so the plaintiff asserts, one to quiet title. V.A.M.S. § 527.150. It is not necessary to say whether the action to quiet title is one at law or in equity (44 Am.Jur., Secs. 3, 5, pp. 4, 6; 74 C.J.S. Quieting Title §§ 1, 6, pp. 10, 14), it is assumed that it could be either. Rhodus v. Geatley, 347 Mo. 397, 403, 147 S.W.2d 631, 635. The important point now is that this case was tried before the court without a jury (Sup.Ct. Rule 73.01(a) (b), V.A.M.R.) and this court has the duty to "review the case upon both the law and the evidence as in suits of an equitable nature" (Sup.Ct.Rule 73.01 (d) and eventually to "give such judgment as such (trial) court ought to have given, as to the appellate court shall seem agreeable to law." Sup.Ct.Rule 83.13(c). See in general Peterson v. Harpst, Mo., 247 S.W.2d 663, 664; Erickson v. Greub, Mo., 287 S.W.2d 873; 3 Am.Jur., Sec. 912, p. 479; 5A C.J.S. Appeal and Error § 1662, p. 580. As to the function and place of declarations of law and motions for directed verdicts in equity cases see Judge Lamm's classic dictum in Lee v. Lee, 258 Mo. 599, 604–605, 167 S.W. 1030, 1032.

It may be, if accepted at face value (Hunter v. Wethington, 205 Mo. 284, 292–293, 103 S.W. 543, 545), that Mrs. Bach's evidence made a prima facie case of adverse possession (Sanderson v. McManus, Mo., 252 S.W.2d 351), but it does not necessarily follow that she is entitled to recover in this action. The trial court did not give full credit to her testimony, this does not mean that she was untruthful or even that the court did not believe her, but it does mean that in its essence her evidence as to the essentials of adverse possession is lacking in convincing probative force. 1 Am.Jur., Sec. 246, p. 928; 2 C.J.S. Adverse Possession § 227, p. 844; Crider v. Meatte, 320 Mo. 474, 7 S.W.2d 691. To illustrate, while Mrs. Bach testified to some "limited use," it must be noted that the

*intention* (Pahler v. Schoenhals, Mo., 234 S.W.2d 581) with which she occupied and used the strip is not cogently manifest; if this essential element is supported the inference is indeed tenuous. Her use and occupancy were tied to the fence, but the fence was not in point of fact, as alleged in her petition, a "line fence." The fence was not on the property or dividing line, it was on the defendant's property, six or seven feet from its west line. Regardless of what Mrs. Bach may have assumed or "supposed," the fence was not the east line of her property or the west line of the defendant's property, legal title to the entire strip was in the defendant. The fence was not designed to mark a boundary line, or even to serve the usual purposes of a fence. While it is now dilapidated, originally the white picket fence was an "ornamental fence." There is no contradiction of the fact that in 1940 Standard Oil Company first constructed an "ornamental fence" 75 feet long and in 1946 (two years after Mrs. Bach's adverse possession began) "added 25 feet of fence there." So, for at least two years of the necessary ten-year period the fence did not enclose or mark any boundary to which Mrs. Bach could have claimed. Jamison v. Galloway, Mo., 254 S.W. 101, 102; Ware v. Cheek, Mo., 201 S.W. 847, 849; Brown v. Chapman, Mo., 163 S.W.2d 920.

Another significant matter, bearing on the elements of adverse possession and particularly on Mrs. Bach's intention, is the event that immediately preceded the filing of this action. In September 1959 Standard Oil Company made application to the Board of Zoning Adjustment to rebuild its filling station on the corner of 31st Street and Benton Boulevard. In connection with that application the company again had its property surveyed and Mrs. Bach's attention was called to the fact that the surveyor's stakes enclosed the disputed strip. This, she says, is the first occasion she had ever had for verbally asserting a claim of ownership by adverse possession. Mrs. Bach and her son at-

tended the formal hearing before the zoning board, but in that hearing and even though it would have been a very important matter they did not claim ownership or adverse possession of the seven-foot strip. It appears, under the city ordinances, that a filling station or building may not be erected within eight feet of the property owner's line and that is what Standard's application and detailed survey proposed. Mrs. Bach's son presented her objections:

"I would like to see them set it a little further away; another 4 feet would give us a little more light in there and make it a little more livable. * * * Well, they are 8 feet now (from the property line); I'd say that if they were 12 feet away, why, it would give us—As it is now, we are not objecting to—If they keep it painted up well, we have no objections to it. * * *

"The Chairman: * * * As I understand, you would have no objection then to the filling station, if they would move it 4 feet to the east; is that right? A. Well, I think that is our essential objection, is giving us, so we are not hemmed in, and not darkened, * * *.

"Q. You didn't answer my question. Would you have any opposition if they moved it 4 feet to the east, then? A. I believe not."

And in this connection, Mrs. Bach and her sons, "in between our family," talked about buying a five-foot strip of ground from the Standard Oil Company. And a few days before the zoning board hearing Mrs. Bach and her son offered to sell her property to the company for $30,000. It is now said that there was no offer to buy the five-foot strip and even had there been such an offer that the fact would not "vitiate her adverse claims." These were not offers to compromise a disputed claim (Sanderson v. McManus, supra), and it may be that their probative effect is for the trier of the fact (the offer to sell was readily admitted, however). Nevertheless, the contemplated purchase and in the circumstances the offer to sell, as with asking permission to use, is "strong" if not "very powerful" evidence that the prior use was not adverse (Bridle Trail Association v. O'Shanick, Mo.App., 290 S.W.2d 401, 407), or to state the inference affirmatively, that her prior use and occupation were in recognition of and in subordination to the title and ownership of the defendant. Railsback v. Bowers, Mo., 257 S.W. 119; Missouri Lumber & Mining Co. v. Jewell, 200 Mo. 707, 98 S.W. 578.

It is not necessary to again repeat the rules of appellate review or to further illustrate from the circumstances all the permissible inferences, it is sufficient to say that the plaintiff's evidence of adverse possession and hence of title is not manifestly compelling and, accordingly, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.